Filed 5/27/14  P. v. Trejo CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDDIE TREJO,<br><br>    Defendant and Appellant. | B247431<br><br>(Los Angeles County<br>Super. Ct. No. BA394913) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Monica Bachner, Judge.  Affirmed as modified.

Comar Law, D. Inder Comar for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Eddie Trejo (defendant) was convicted of assault by means likely to produce great bodily injury in violation of (Pen. Code, § 245, subd. (a)(4)[1]). On appeal, defendant contends that the trial court abused its discretion in admitting evidence of prior acts of domestic violence, and by prohibiting defense counsel from cross-examining a police officer on a statement made in his partner's police report. The Attorney General contends, and defendant does not oppose, that the abstract of judgment must be amended because it contains two clerical errors. We order that the abstract of judgment be amended as set forth below, and we otherwise affirm the judgment.

## BACKGROUND

### A.      Factual Background

#### 1.      Prosecution Evidence

Erica R. (Erica) testified that as of March 2012, she had lived with defendant for about 10 years. Throughout the day on March 10, 2012, she and defendant drank a bottle of vodka in their residence. After watching movies with defendant at home, Erica went to sleep and woke up at about 2:00 a.m. on March 11, 2012. She and defendant had a normal conversation after she awoke. Suddenly and for no apparent reason, defendant "started going off" and "kind of got crazy." With rage in his eyes, defendant started yelling, grabbed Erica, punched her head and face with a closed fist, and tried to strangle her. In a drunken, slurred, angry voice, defendant told Erica, "'I hate you, I hate you. If I have got to go back,' regarding jail, 'I am going to kill you, bitch.'" Erica feared for her life.

---

[1]      All statutory citations are to the Penal Code unless otherwise noted.

2

Erica testified that defendant struck her to the point that she blacked out. When Erica regained consciousness, she saw that there were broken crutches on the floor and her body was covered in bruises. Erica's head was full of bumps, her ears were purple, and she had a black eye.

Erica testified that she believed she must have called 911 because the police came to her home at about 4:00 a.m. Los Angeles Police Department Officer Victor Villanueva testified that during the early morning of March 11, 2012, he went to Erica's home. Officer Villanueva saw Erica and defendant, and both appeared to be under the influence of alcohol. Erica was upset and crying, had a small laceration on her right arm near her elbow, and bruises on the left side of her face.

Officer Villanueva testified that Erica told Officer Villanueva that defendant and she had been drinking alcohol, and that defendant became angry and struck her several times on the face for no apparent reason. Erica said that she was in an "on-and-off relationship" with defendant for about 10 years, she was afraid of defendant every time he drank because he became angry or violent, defendant had been arrested previously for domestic violence against her, and she did not want defendant arrested. Defendant told police that he had been drinking, but that was all he remembered.

Officer Villanueva testified that he arrested defendant. Erica testified that she asked the police officers if they were planning to release defendant that night. She was worried that if defendant was released that night, he probably would kill her if she stayed in the house.

Erica testified that during the time she interacted with Officer Villanueva, she just wanted to lie down because she started to hurt. Her ears were ringing, her lower back was in such great pain that she could not walk, her body ached, and her head hurt. Erica was in pain. So after the police left, she lay down on her living room floor and could not get up until noon the following day.

V.E. testified that she was Erica's neighbor, and she saw that Erica had bruises on her back, the front of her body, and her face. Erica "looked pretty messed up," and V.E.

3

perceived that Erica was in a lot of pain. Erica told V.E. that defendant "beat her up" and "broke his crutches" on her.

Los Angeles Police Department Detective John Elder testified that on March 12, 2012, he met Erica at her home. Erica looked very beat up and was bent over like a person punched in the stomach. Detective Elder seriously considered calling the paramedics, but instead asked a neighbor to watch her. It was difficult for Detective Elder to interview Erica because she was in a lot of pain. Erica confirmed her original statement from the crime report that defendant had been drinking, beat her, and threatened to kill her.

Erica testified that she did not see defendant strike her with crutches, but prior to the incident defendant's crutches were unbroken and when she regained consciousness from defendant's assault she saw that there were broken crutches on the floor. She believed that defendant struck her with the crutches, and she brought the broken crutches to Detective Elder's attention.

Erica testified that at the time of trial, she still felt defendant wanted to kill or hurt her because she knew he was very angry. She was worried that if he started to consume alcohol and he saw her, he would kill her.

### 2. *Defendant's Evidence*

Defendant testified that regarding the March 2012 incident, he and Erica drank vodka and he may have been intoxicated. Defendant and Erica were watching television and Erica ultimately fell asleep by the coffee table. At some point Erica got out of her bed and struck defendant once when he was half asleep. Erica hit defendant hard enough to give him a cut above his eyebrow.

Defendant said that he "did not lay a finger on Erica" the night of the incident. Defendant denied hitting, punching or choking Erica, injuring her, or threatening to kill her. He denied striking her with his crutches, and he did not know how his crutches broke.

4

Defendant testified that after Erica struck him, she went to "her room," which was the kitchen. Defendant fell asleep in a chair in front of the television in the living room, and the police woke him.

Defendant said that he has seen Erica have seizures. Occasionally during Erica's seizures, she would injure herself by falling on the floor, hitting her face. Erica would also have seizures after drinking.

### B.    Procedural Background

The District Attorney of Los Angeles County filed an information charging defendant with assault by means likely to produce great bodily injury in violation of section 245, subdivision (a)(4) (count 1) and criminal threats in violation of section 422, subdivision (a) (count 2). The District Attorney alleged as to count 1 that defendant had been previously convicted of assault with a deadly weapon in violation of section 245, subdivision (1) in 2003 (case number. BA247547) and 2010 (case number BA370579), and as to counts 1 and 2, the 2010 prior conviction was alleged to be a serious or violent felony under the "Three Strikes" law as defined by sections 667, subds. (b) - (i), and 1170.12, subds. (a)-(d)).

Following trial, the jury found defendant guilty on count 1, and not guilty on count 2. The jury found that defendant admitted the 2010 prior conviction, and found true the prior conviction allegations and that defendant violated probation in the 2010 case.

The trial court imposed sentences on the current case, case number BA394913, and the 2010 prior conviction case, case number BA370579. On the current case, the trial court sentenced defendant to state prison for a term of eight years consisting of the high term of four years on count 1, doubled under the Three Strikes law. The trial court ordered that defendant's sentence on the 2010 prior conviction case was to run concurrently with the current case. The trial court ordered defendant to pay various fees, fines and penalties, and awarded defendant custody credit. Defendant filed a timely notice of appeal.

5

**DISCUSSION**

### A.    Admission of Evidence of Prior Acts of Domestic Violence

Defendant contends that the trial court abused its discretion in admitting evidence of his prior acts of domestic violence because the evidence was inadmissible under Evidence Code section 352.  We disagree.

### 1.    *Standard of Review*

Defendant's challenge to the admissibility of evidence . . . as a violation of Evidence Code section 352 is analyzed under an abuse of discretion standard.  (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 406.)  "The trial court has broad discretion under [Evidence Code] section 352 to assess whether the probative value of evidence is outweighed by the risk of undue prejudice, consumption of time or confusion."  (*People v. Ogle* (2010) 185 Cal.App.4th 1138, 1145.)  "A trial court abuses its discretion when its ruling 'fall[s] "outside the bounds of reason."'  [Citations.]"  (*People v. Waidla* (2000) 22 Cal.4th 690, 714.)  "We will not overturn or disturb a trial court's exercise of its discretion under [Evidence Code] section 352 in the absence of manifest abuse, upon a finding that its decision was palpably arbitrary, capricious and patently absurd. [Citations.]  'The [trial] court's exercise of discretion under Evidence Code section 352 will not be disturbed on appeal unless the court clearly abused its discretion, e.g., when the prejudicial effect of the evidence clearly outweighed its probative value.'  [Citation.]"  (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

### 2.    *Background Facts*

#### a)    Proceedings

Prior to trial, the prosecutor filed a motion to admit evidence of four separate incidents of prior acts of domestic violence committed by defendant in January 2003,

September 2005, October 2006 and November 2009. The motion was made under Evidence Code sections 1109 and 1101, subdivision (b).

Following argument by counsel during the hearing on the motion, the trial court stated that an analysis must be made under Evidence Code section 352. Defendant's counsel argued that the evidence was prejudicial because the prior incidents involved much more aggressive behavior than the incident for which defendant was charged in this case.

The trial court held that the prior acts were admissible as acts of domestic violence under Evidence Code section 1109, and stated, "The question before the court is whether or not . . . , under 352, [the admission of the evidence] would it necessitate an undue consumption of time, or create substantial undue prejudice. The court does not believe it would create a danger of undue prejudice. . . . [T]hey are the same parties, it's not a different person alleging that defendant committed . . . some type of assault on her. . . . [T]he date of the instant case is 2012, and the first incident . . . is 2003. So it's within a nine-year period. They appear to be pretty continuous every few years. [¶] It's directly relevant to it within the intent of the domestic violence 1109, and it is clearly relevant to the sustained fear of the victim, as well as the other items. . . . I have weighed the prejudicial value, and probative effect, and I do find that the probative value does outweigh the prejudicial effect, and . . . that it does not create a substantial danger of undue prejudice. So, . . . I do recognize it's a discretionary call on my part."

At trial, counsel held a sidebar conference with the trial court at which the prosecutor stated he wanted to show Erica two photographs depicting her injuries she sustained to her neck from the January 2003 incident of domestic violence. Defendant's counsel objected to the introduction of the photographs, stating, "If . . . . [Erica] remembers [the January 2003 incident], this is basically prior evidence. So, I think her testimony doesn't need to be corroborated [by the introduction of the photographs]. If she remembers [the January 2003 incident], [the prosecutor] is using [the photographs] as corroborating evidence."

7

After the trial court excused the jury, the prosecutor discussed in detail the photographs he wished to introduce: two photographs regarding the January 2003 incident of domestic violence, and three photographs regarding the November 2009 incident of domestic violence. Defense counsel objected on the ground that the pictures were cumulative. The trial court ruled that it would allow the photographs into evidence, stating that the photographs "don't appear to be inflammatory in the least. They are photographs of different injuries, close ups." Defendant's counsel objected to the photographs of the January 2003 incident as prejudicial and cumulative, explaining, "My concern is that initially the court had indicated that it was allowing these photographs because the prosecution has the right to corroborate the evidence. If [Erica] is able to testify, then there is no need for corroboration." The prosecutor responded, "Well, her credibility is always at issue. Just because the witness says something, it does not mean that the People would [not] try to corroborate." The trial court overruled defendant's objections to the two photographs of the January 2003 incident, stating, "The People may corroborate with documentary or other evidence, testimony. And their probative value outweighs the effect." The trial court also stated that the second photograph was a close-up of the first photograph of the neck injury, but the second photograph was "not as clear."

The following exchange then occurred: "[Trial court:] Is there testimony that there is some injury to the face, in addition to the neck that you are going to be illustrating? And that is showing the picture from [the January] 2003 [incident]. One shows injuries to the face and neck. The other is to the neck only. [¶] [Prosecutor:] I believe that there will be, your Honor. Now, I can't promise. I hope to speak to Erica . . . after the break here, regarding her recollection. She has previously reported to the police that her neck was injured, and that her face and head were injured, because he was hitting her head against the pavement. So, I don't believe two photographs of a prior physical assault [are] cumulative. And they are not two identical images, as the court correctly notes. One depicts her, and you can identify it as her, from the photograph. And it shows her right side, I believe, or maybe left side. I am looking at it backwards

8

right now. But I believe it's her left side of her face, and injuries, two minor abrasion-type injuries to her cheek area. [¶] And the second photograph is a close up of injuries that are also depicted in the first image, but in a less clear, and less direct fashion. [¶] And, so, I just don't think that—it's not as if I am trying to parade . . . a whole roll of film regarding this incident. Just two images, which most appropriately and clearly depict the injury. [¶] . . . [¶] [Defendant's counsel:] It's already in the first instant matter we have got . . . 11 photographs of basically three or four injuries of the complaining witness. Now we have got five photographs of a prior incident, and two photographs of a prior incident that occurred in [January] 2003. [¶] I don't think the probative value is there. If she testifies to the injury, she is the best evidence of what occurred. [¶] If the court wants to allow photographs to corroborate, I think one is sufficient." The trial court overruled the defendant's objection.

The prosecutor requested that the trial court take judicial notice of certified minute orders showing that defendant pleaded no contest to assault by means likely to produce great bodily injury, alleged to have been committed against Erica on January 12, 2003, and that defendant pleaded no contest to assault with a deadly weapon, not a firearm, alleged to have been committed against Erica on November 16, 2009. Defendant objected that the evidence was unnecessary and prejudicial because Erica and police officers testified about the incidents, and photographs of the incidents were shown to the jury. The trial court overruled defendant's objections and took judicial notice of the evidence, stating, "The court is going to allow the evidence. It is not overly prejudicial. . . . Counsel has pointed out that the credibility of the complaining witness is at issue here. It does appear to be an issue. [¶] So this is additional corroboration that the defendant is a person that caused the injury, not just that she was injured and reported it. She was injured by the defendant to the police. So, it is probative. It is actually not overly prejudicial. The jury will not be distracted about considering whether or not they should convict him of those charges as to these two, because he's already been convicted. It's not prejudicial. It's not an undue consumption of time."

9

i)      January 2003 Incident

Erica testified that she was at home with defendant and Erica's telephone rang. Defendant "got my phone," and "didn't recognize the number." Defendant assumed that the person calling was someone of whom he disapproved, and defendant began calling Erica names. Erica left the house because she was afraid defendant was going to hurt her. Defendant chased after her, ran up to her and pushed her down the stairs. Defendant "jumped on" Erica, choked her and "slammed" her head into the cement. Erica "pull[ed]" herself down the street attempting to locate a telephone to call the police. Defendant followed as she traveled down the street, continued to throw her to the floor and beat her, and took her purse and threw it down the street. Erica testified that someone must have heard the incident and called the police.

Los Angeles Police Department Sergeant Paul Hendry testified that he and his partner, Los Angeles Police Department Officer Ponce, responded to a call regarding the incident. The officers found Erica and photographed her. Two photographs of Erica depicting her injuries were shown to the jury.

Sergeant Hendry testified that Erica said when her cellular telephone rang, defendant took the telephone from her pocket. Defendant did not recognize the telephone number on the Erica's telephone number, and he "berat[ed] her." When Erica tried to walk away, defendant pushed her from behind and down the stairs onto the street, "jumped on top of her," grabbed her around the neck and choked her, "grabbed her hair," and "hit her face into the cement a couple of times." Erica told the officers that she almost lost consciousness. The trial court took judicial notice that defendant pleaded no contest to assault by means likely to produce great bodily injury, alleged to have been committed against Erica on January 12, 2003.

### ii) September 2005 Incident

Erica testified that in September 2005, she started dating Vincente Exposito. On one occasion when she came home, defendant struck the side of her head, threw her to the ground and started strangling her. Defendant called Erica "ho," "slut" and "bitch." Defendant said, "Why are you going out with that loser, he's no good . . . ."

Erica testified that she believed that defendant gave her "markings" on her neck and "a lump" on her head, but "it wasn't to the point where [she] wanted to go to a hospital." Erica believed that Exposito called the police, and she spoke to the police "about what [had] happened to [her]."

### iii) October 2006 Incident

Erica testified that by October 2006, she was frequently staying at Exposito's home, but still considered defendant's residence her home and kept her personal effects there. On one occasion in October 2006, Exposito drove Erica and Exposito's daughter, V.E., to defendant's home to allow Erica to pick up some of her belongings. Exposito dropped Erica off and waited in his car with his daughter. Erica walked into the kitchen, and defendant entered the room and called Erica names. Defendant pulled out a knife from the kitchen drawer, held it behind his back, and told Erica, "Well, bitch, then I guess I'm going to stab you." Defendant struck Erica on her neck with the knife handle. Erica ran out the door and defendant ran after her. When Erica entered Exposito's car, defendant stabbed one of the car tires with the knife, puncturing the tire and immobilizing the car. Erica, Exposito's daughter, and Exposito exited the car, and the police responded to the incident.

Exposito testified that on one occasion in October 2006, he drove Erica and his daughter, V.E., to defendant's home so that Erica to pick up some of her personal belongings. Defendant dropped Erica off at defendant's residence, and waited in his car for Erica to return. Erica left the residence looking "a bit startled," and defendant pursued her with a knife in his hand. Exposito and Erica exchanged "some kind of words" with defendant, and defendant punctured the car tire with his knife.

11

Erica testified that in November 2009, she and defendant owned a cat. During that time, Erica had "gone out" with a man, came home late, and went to her room to sleep. Defendant came into her room and started yelling at Erica, calling her a "ho," and yelling at her, "You bitch, you let my cat out. She's gone now." Defendant appeared to be drunk and hit Erica with his crutches.

Erica testified that she did not want to report the incident to the police because she was ashamed and embarrassed. However, at the urging of her family, Erica spoke to the police two or three days after the incident. Erica told the police "what happened to" her, and they took photographs of her injuries. Erica was shown one of the photographs and testified that she sustained red blotchy markings on her cheeks and forehead, a black-eye, and bruises on her shoulders and her neck.

Los Angeles Police Department Officer Patricia Pena testified that she responded to the scene of the incident, and observed bruising on Erica's face, shoulder and left side. Officer Pena took photographs of Erica. Three photographs of Erica depicting her injuries were shown to the jury. Officer Patricia Pena testified that in addition to the injuries shown on the photographs, Erica complained about being in pain and receiving two bumps in the back of her head.

Officer Patricia Pena testified that Erica, who did not appear to be intoxicated, told her that the day of the incident defendant had purchased a gallon bottle of vodka and both Erica and defendant were watching movies. Erica went to bed and was awakened by defendant demanding to know the location of his cat. At that point, defendant hit Erica approximately eight times with his crutches. The trial court took judicial notice that defendant pleaded no contest to assault with a deadly weapon, not a firearm, alleged to have been committed against Erica on November 16, 2009.

### 3. Analysis

Evidence Code section 1101 states," (a) Except as provided in this section and in Section[] . . . 1109, evidence of a person's character or a trait of his or her character

12

(whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Evidence Code section 1109, subdivision (a)(1) states in pertinent part, "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." "Section 1109, in effect, 'permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes. [Citations.]'" (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1232-1233.)

As stated in *People v. Brown* (2000) 77 Cal App.4th 1324, the exception to Evidence Code section 1101 set forth in section 1109 was created "'because of the typically repetitive nature of domestic violence crimes, and because of the acute difficulties of proof associated with frequently uncooperative victims and third-party witnesses who are often children or neighbors who may fear retaliation from the abuser and do not wish to become involved.' [Citation.]" (*Id.* at p. 1333.)

"The legislative history of [Evidence Code] section 1109, which recognizes the special nature of domestic violence crime, [states]: [¶] 'The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. If we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their intimate partners, even kill them, and go on to beat or kill the next intimate partner. Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all.' [Citation.]" (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027-1028, fn omitted.) "The admission of prior acts as propensity evidence encompasses both

13

charged and uncharged acts. [Citations.]" (*People v. Brown*, *supra*, 192 Cal.App.4th at p. 1233.)

Evidence Code section 352 provides as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "'"[P]rejudice" in the context of Evidence Code section 352 is not synonymous with "damaging": it refers to evidence that poses an intolerable risk to the fairness of the proceedings or reliability of the outcome. [Citation.]'" (*People v. Duff* (2014) 58 Cal.4th 527, 564.)

Defendant, as he did in the trial court, contends that the admission of evidence of the four prior acts of domestic violence was unduly prejudicial because evidence of those acts were "significantly more inflammatory" than the incident of domestic violence for which he was charged here. Defendant argues that the evidence of the prior acts of domestic violence concerned defendant "allegedly jumping on Erica . . ., choking [Erica] into near unconsciousness, slamming [Erica's] head into the cement and dragging her across the sidewalk. . ., and attacking multiple people with a knife . . . " Defendant also argues that the evidence of the prior acts concerned defendant "needlessly throwing Erica's purse on the street after [defendant] had beaten her up . . ., and becoming aggressive because a cat had been let out . . . ."

Evidence of the four prior acts of domestic violence did not describe significantly more inflammatory acts than the evidence regarding the incident of domestic violence for which defendant was charged here such that it was unduly prejudicial to defendant. Regarding the incident for which defendant was charged, Erica testified that defendant punched her on her head and face with a closed fist, and tried to strangle her. Defendant told Erica, "'I hate you, I hate you. If I have got to go back,' regarding jail, 'I am going to kill you, bitch.'" Defendant struck Erica to the point that she blacked out, and Erica believed that while she was unconscious defendant struck her with crutches in such a matter as to cause the crutches to break.

14

Erica testified that as a result of the incident, her body was covered in bruises, her head was full of bumps, her ears were purple, she sustained a black eye, her ears were ringing, her lower back was in such great pain that she could not walk, her body ached, and her head hurt. Officer Villanueva testified that Erica had a small laceration on her right arm near her elbow, and bruises on the left side of her face. Erica testified that she was in so much pain that after the police left her home shortly after the incident, she lay down on her living room floor and could not get up until noon the following day. Detective Elder testified that it was difficult for him to interview Erica the day after the incident because she was in a lot of pain.

Defendant contends that the admission of evidence relating to the two prior incidents for which he was never charged or convicted—the September 2005 and October 2006 incidents—confused the jury because, "All things being equal, the jury may have seen the trial as a opportunity to punish [defendant] for what he allegedly did to Erica, despite never being arrested or charge with an offense." Defendant makes this contention for the first time on appeal. Defendant opposed the prosecutor's motion to admit evidence of the four prior incidents of domestic violence on the ground of Evidence Code section 352, arguing that the prior acts involved significantly more inflammatory acts than the incident of domestic violence for which he was charged here. Defendant did not argue in opposition to the prosecutor's motion that there was a substantial danger that the jury would be confused and punish defendant for the two prior acts for which he had not been convicted. Defendant also did not otherwise object to the evidence of the September 2005 and October 2006 incidents on that basis. Defendant therefore forfeited this contention. (*People v. Clark* (1993) 5 Cal.4th 950, 988, fn. 13 ["When a party does not raise an argument at trial, he may not do so on appeal"], disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *In re Michael L.* (1985) 39 Cal.3d 81, 88 ["Objections not presented to the trial court cannot be raised for the first time on appeal"]; *People v. Lord* (1994) 30 Cal.App.4th 1718, 1722 [defendant's failure to request a hearing on the necessity of a support person's presence, waived any objection to the failure to hold a hearing].) "Ordinarily, an appellate court will not

15

consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.] The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection . . . .' [Citation.]" (*People v. French* (2008) 43 Cal.4th 36, 46.)

Defendant contends that forfeiture should not apply because his claim involves the deprivation of fundamental rights, citing *People v. Vera* (1997) 15 Cal.4th 269. Defendant argues that his claim that the trial court erred in allowing the introduction of evidence concerning his prior acts of domestic violence was based on his contention that it was violation of his constitutional due process right. In rejecting defendant's contention that forfeiture does not apply, we follow with the Supreme Court's analysis in *People v. Tully* (2012) 54 Cal.4th 952 that, "In *Vera*, we observed that a defendant 'is not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights.' ([*People v. Vera*, *supra*, 15 Cal.4th at p.] 276.) But none of the narrow class of such rights—a plea of once in jeopardy and the right to jury trial (*id.* at pp. 276-277)—is implicated here. Moreover, that dictum in *Vera* was not intended to provide defendants with an 'end run' around the forfeiture rule, thus eviscerating it. We therefore reject defendant's reliance on *Vera* here and at every other point at which he invokes it to avoid forfeiture." (*Id.* at p. 980, fn. 9; *People v. Moreno* (2011) 192 Cal.App.4th 692, 706, fn. 8.)

Defendant contends that forfeiture should not apply because it would have been futile for his counsel to "have made such argument." Defendant contends that the trial court denied his counsel's "additional objections," and therefore, "It is clear that the [trial] court would not have ruled in favor of [defendant] with respect to additional objections to the evidence, whatever they may have been, and was inclined to permit in all the prior act evidence." There is no evidence in the record, however, that supports defendant's contention that the trial court would not have ruled in favor of defendant as to those "additional objections, whatever they may have been."

16

Even if we were to consider defendant's contention, we reject it. The trial court instructed the jury with Judicial Council of California Criminal Jury Instructions CALCRIM No. 375, stating in part, "The People presented evidence that the defendant committed other offenses or acts, specifically: the incidents in January 2003, September 2005, October 2006, and November 2009, that were not charged in this case. [¶] . . . [¶] If you decide that the defendant committed the offenses or acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: [¶] The defendant acted with the intent that his statement be understood as a threat in this case; or [¶] The victim's alleged injuries were caused by the defendant or as a result of mistake or accident; or [¶] The threat caused Erica . . . to be in sustained fear for her own safety.. [¶] . . . [¶] Do not consider this evidence for any other purpose except for the limited purposes described in instructions 316 and 852."

The trial court instructed the jury with CALCRIM No. 316, referring to evidence of witness credibility. The jury was also instructed with CALCRIM No. 852, stating in part, "The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically: the incidents in January 2003, September 2005, October 2006, and November 2009. [¶] . . . [¶] If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence . . . as charged here."

The admission of evidence relating to the September 2005 and October 2006 incidents should not have confused the jury such that it might have, in effect, punished defendant for those instances. The jury was specifically instructed not consider the evidence of the September 2005 and October 2006 incidents for any purpose except for the limited purposes of deciding (1) whether defendant acted with the intent that any statement he made be understood as a threat in this case (CALCRIM No. 375); (2) whether Erica's alleged injuries were caused by defendant or were as a result of mistake or accident (CALCRIM No. 375); (3) whether any threat made by defendant caused Erica to be in sustained fear for her own safety (CALCRIM No. 375); (4) witness

17

credibility (CALCRIM No. 316); and (5) whether defendant "was disposed or inclined to commit domestic violence . . . as charged here" (CALCRIM No. 852). Because we presume the jurors understood and followed the trial court's instructions (*People v. Johnson* (2009) 180 Cal.App.4th 702, 710; *People v. Avila* (2009) 46 Cal.4th 680, 719; *People v. Bennett* (2009) 45 Cal.4th 577, 596), the admission of evidence relating to the September 2005 and October 2006 incidents should not have confused the jury. There was no reasonable danger of the jury punishing defendant for those prior incidents.

Defendant contends that the trial court erred in allowing the live testimony of the four prior incidents of domestic violence and introducing into evidence the photographs of the two of the prior incidents, because "the court could have easily limited the introduction of [that evidence] by introducing [it] through judicial notice or stipulation." Defendant did not make this argument before the trial court in support of his objection— made on the ground of Evidence Code section 352—to the prosecutor's motion to admit evidence of the prior incidents of domestic violence made, nor did defendant otherwise object to all of the other evidence of the four prior incidents on that basis. Defendant therefore forfeited this contention. (*People v. Clark, supra,* 5 Cal.4th at p. 988, fn. 13; *In re Michael L.*, *supra*, 39 Cal.3d at p. 88; *People v. Lord*, *supra*, 30 Cal.App.4th at p. 1722.) In addition, defendant did not identify for the trial court, and does not identify on appeal, the documents of which the trial court could have taken judicial notice—other than presumably the records of the two convictions—that would have confirmed that each of the four incidents of domestic violence occurred. Defendant also did not present the trial court with a proposed stipulation that he contends would suffice in lieu of the other evidence. We therefore cannot determine whether the trial court abused its discretion based on this contention, which defendant makes for the first time on appeal.

Defendant contends that he was unduly prejudiced by "the sum effect of the trial court admitting in evidence of four prior incidents, including 'Testimony from Erica, from four additional witnesses, and from [defendant]," as well as 'pictures of injuries from two of the previous incidents' and then finally 'judicial notice that [defendant] was convicted of some of the prior acts.'" Defendant objected on the ground the evidence was

prejudicial because it was cumulative only as to the introduction into evidence of the photographs of the January 2003 and November 2009 incidents, and the trial court's taking judicial notice of defendant pleading no contest to those incidents.

Relevant evidence, however, includes evidence relating to the credibility of a witness (Evid. Code, § 210.), and "a witness's credibility is always in issue . . ." (*Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1297; *People v. Chandler* (1997) 56 Cal.App.4th 703, 707). Although somewhat cumulative, the introduction into evidence of photographs of the two incidents and the taking of judicial notice that defendant was convicted of those incidents was corroboration of Erica's testimony, including that she was injured and defendant was the person that caused the injuries. The trial court did not abuse its discretion in allowing the introduction of the evidence.

## B.    Limiting Cross-examination

Defendant contends that the trial court abused its discretion under Evidence Code section 352 by prohibiting defense counsel from cross-examining a police officer on a statement made in his partner's police report. We disagree.

### 1.    *Standard of Review*

As noted above, we review the trial court's evidentiary ruling based on Evidence Code section 352 under an abuse of discretion standard. (*People v. Jennings*, *supra*, 81 Cal.App.4th at p. 1314.)

### 2.    *Applicable Law*

Only relevant evidence is admissible. (Evid. Code, § 350.) "'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "Relevant evidence may nonetheless be excluded under Evidence Code section 352 . . . . [Citation.]" (*People v. Richardson* (2008) 43 Cal.4th 959, 1000-1001.) As noted above, Evidence Code section 352 provides that, "The court in its discretion may exclude

19

evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

### 3. Background Facts

Following the direct examination of Officer Villanueva, counsel had a sidebar conference, during which the following exchange occurred: "[Prosecutor:] [T]his [police] report is authored by the other officer, not the testifying officer[, Officer Villanueva]. There is a statement in here that said due to the lack of cooperation from both parties, we could not determine the true story of what had occurred. So, if counsel intends to . . . cross-examine [Officer Villanueva] in any way on that statement, I'm objecting on multiple grounds. It's irrelevant, their opinion of whether they could determine what the issues were at that time. It is not, relevant based on all the evidence, based on that trial. They obviously cannot express an opinion as to the defendant's guilt or lack thereof. [¶] [Defendant's counsel:] I think it's relevant. They're trained officers. . . . [¶] . . . [¶] [The prosecutor] elicited that my client was arrested. . . . [¶] . . . [¶] [Prosecutor:] [The arrest is] just simply essentially an operative fact in the investigation. I'm not saying that it's evidence that he committed the crime. So I didn't elicit their opinion that he was the dominant aggressor. Obviously if I somehow did that, and if for some reason she didn't object, I could see how— [¶] . . . [¶] [Defendant's counsel:] [The prosecutor] had the officer testify that my client was arrested. There is no reason to ask that. And I didn't object, because I didn't want to highlight it in front of the jury. I mean, the court has already told the jury as per the jury instructions, that the fact that he was arrested is not evidence that he committed the crime, so there was no reason to ask that question. [¶] [Trial court:] Okay. Under 352, I'm excluding it."

20

#### 4.    *Analysis*

Defendant contends that the trial court erred by prohibiting defense counsel, under Evidence Code section 352, from cross-examining Officer Villanueva on a statement contained in a police report authored by Officer Villanueva's partner, who did not testify. That statement was: "[D]ue to the lack of cooperation from both parties, we could not determine the true story of what had occurred."

The probative value in cross-examining Officer Villanueva on the statement made in the police report was limited.  Officer Villanueva did not write the police report, including the statement on which defendant seeks to cross-examine him.  In addition, the scope of cross-examination is limited by scope of direct examination (Evid. Code, §§ 761, 773, subd. (a)), and Officer Villanueva did not testify during his direct examination as to his "what had occurred."  Indeed, Officer Villanueva could not have properly testified as to "what had occurred" because he testified that he arrived at the incident scene after the incident occurred.

Also, to the extent Officer Villanueva's opinion of "the true story of what had occurred" would be an opinion on defendant's guilt, it is irrelevant.  "[T]he true story of what had occurred" is within the purview of the jury, and Officer Villanueva's testimony regarding it would be of no assistance to the trier of fact.  "'A witness may not express an opinion on a defendant's guilt. [Citations.]  The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.]  "Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact.  To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt."'  [Citations.]"  (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

The limited probative value of the proposed cross-examination is substantially outweighed by its prejudicial effect.  Because Officer Villanueva's testimony on cross-examination regarding the statement made in police report written by his partner would be of no assistance to the jury, allowing that cross-examination would "necessitate undue consumption of time."  (Evid. Code, § 352.)

21

Defendant also contends that the trial court's evidentiary ruling was an abuse of discretion because the trial court failed to perform a Evidence Code section 352 analysis on the record " by weigh[ing] the prejudice versus [the] probative effect of the proffered testimony, which it [was] required to do as a matter of law." We disagree.

"[A]s the Supreme Court has repeatedly and recently reaffirmed, 'when ruling on a section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state that it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under . . . section 352.' [Citations.]" (*People v. Jennings*, *supra*, 81 Cal.App.4th at p.1315; *People v. Crittenden* (1994) 9 Cal.4th 83, 135.) "No 'magic words' are necessary to show an appropriate exercise of discretion under Evidence Code section 352. [Citation.] What is important is that the record manifest the trial court's exercise of discretion available under Evidence Code section 352. [Citations.]" (*In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1845.) Here, the record reflects the trial court's exercised its discretion available under Evidence Code section 352. It heard counsel's arguments regarding the admissibility of the challenged evidence, and said, "Under 352, I'm excluding it." The trial court did not abuse its discretion in excluding the evidence.

### C.     Correction of Abstract of Judgment

The Attorney General contends, and defendant does not oppose, that the abstract of judgment must be amended because it contains two clerical errors. We agree.

First, the abstract of judgment states that the crime for which defendant was convicted, assault likely to produce great bodily injury (§ 245, subd. (a)(4)), was count 2. This listing is incorrect. This crime was charged as count 1, and defendant was found guilty of the crime as count 1. Defendant was found not guilty on count 2—criminal threats (§ 222, subd. (a)). The abstract of judgment should be corrected to state that defendant was convicted on count 1.

Second, the abstract of judgment states that the sentence in this matter, case number BA394913, is to run concurrently with itself. During its oral pronouncement of

sentencing, the trial court ordered defendant's sentence in the 2010 prior conviction case—case number BA370579—was to run concurrently with his sentence in the instant matter. "[A] trial court's oral sentence governs if it is different from what appears in a minute order or an abstract of judgment [citations]." (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1221; *People v. Walz* (2008) 160 Cal.App.4th 1364, 1367, fn. 3.) Accordingly, the abstract of judgment should be corrected to reflect the trial court's oral pronouncement that defendant's sentence in the instant matter run concurrently with his sentence in case number BA370579.

## DISPOSITION

We order that the abstract of judgment be amended to state that the crime for which defendant convicted, assault likely to produce great bodily injury (§ 245, subd. (a)(4)), was count 1, and to reflect the trial court's oral pronouncement that defendant's sentence in the instant matter was run concurrently with case number BA370579. The trial court shall forward to the Department of Corrections and Rehabilitation the amended abstract of judgment. In all other respects the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


MINK, J.*

---

*      Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.