[No. C018544. Third Dist. Apr. 19, 1995.]

In re ROMEO C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROMEO C., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Facts and parts I through VI and VIII and IX of the Discussion.

## COUNSEL

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Timothy L. Rieger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—Following a contested jurisdictional hearing, the juvenile court found that the minor Romeo C., along with co-accuseds James C. and Low Ching S., had committed a felony violation of Penal Code section 246 (unlawfully and maliciously discharging a firearm at an inhabited dwelling).[1] The court also found in enhancement that a principal in the offense was armed with a shotgun (§ 12022, subd. (a)(1)) and that the offenses were committed by and for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

At the dispositional hearing the juvenile court found the minor to be a ward of the court and ordered him committed to the California Youth Authority (CYA) for a total of eleven years, based on a seven-year term for the main offense, a one-year enhancement pursuant to section 12022, subdivision (a)(1), and a three-year enhancement pursuant to section 186.22, subdivision (b). The minor was also ordered to pay a $250 restitution fine.

On appeal the minor contends: (1) no substantial evidence supports the minor's adjudication; (2) his statement to the police should have been excluded because it was obtained in violation of *Miranda*;[2] (3) evidence was improperly admitted against him under the "coconspirator exception" to the hearsay rule; (4) the juvenile court's refusal to permit the minor to present the minor's full statement to the police in evidence caused him prejudice; (5) no substantial evidence supports the street gang enhancement; (6) the firearm enhancement must be stricken because the use of a firearm is an element of the offense the minor committed; (7) the juvenile court improperly denied the minor the opportunity to obtain the testimony of the probation officer at the dispositional hearing; (8) the juvenile court abused its discretion by

---

[1] Except as indicated all undesignated section references are to the Penal Code.

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

committing the minor to CYA; and (9) the juvenile court improperly imposed the restitution fine without determining the minor's ability to pay.

In this published portion of the opinion we conclude the juvenile court properly exercised its discretion to preclude cross-examination of the probation officer at the dispositional hearing. In the unpublished portion of the opinion, we agree with the minor that both enhancements must be stricken, but reject his other contentions.

## FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

## I-VI*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## VII

The minor contends the juvenile court erred prejudicially at the dispositional hearing by refusing to allow him to cross-examine the probation officer who prepared the dispositional social study. According to the minor, both statutory right and due process entitled him to obtain the probation officer's testimony. We disagree.

Our first task is to identify the appropriate rules of evidence to be applied at a dispositional hearing.

Welfare and Institutions Code section 701 governs the conduct of *jurisdictional* hearings. That statute provides in relevant part: "The admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision." (See rule 1488(b) of Cal. Rules of Court; *In re Antonio A.* (1990) 225 Cal.App.3d 700, 704 [275 Cal.Rptr. 482].)[12]

There is no correlative statute making the Evidence Code generally applicable to a dispositional hearing. Rather, Welfare and Institutions Code section 706 provides: "After finding that a minor is a person described in

---

*See footnote, *ante*, page 1838.

[12]Moreover, Welfare and Institutions Code section 702.5 expressly grants the minor rights of confrontation and cross-examination of witnesses at a jurisdictional hearing.

Section 601 or 602, the court shall hear evidence on the question of the proper disposition to be made of the minor. *The court shall receive in evidence the social study of the minor made by the probation officer and such other relevant and material evidence as may be offered*, and in any judgment and order of disposition, shall state the social study made by the probation officer has been read and considered by the court." (Italics added; see *In re Michael V.* (1986) 178 Cal.App.3d 159, 169-170 [223 Cal.Rptr. 503].)[13]

The minor asserts that the directive of Welfare and Institutions Code section 706 for the court to receive "the social study of the minor made by the probation officer *and* such other relevant and material evidence as may be offered" (italics added) means that the court must grant the minor the right to cross-examine the probation officer on request. We cannot subscribe to the view that Welfare and Institutions Code section 706 mandates without qualification the presentation of all relevant evidence at a dispositional hearing. Rather, as we shall explain, such a literal construction of the statute would lead to absurdity. We shall conclude the provisions of Evidence Code section 352[14] (allowing the court to limit relevant evidence if it is cumulative, time wasting, or likely to confuse the issues) are necessarily implied in Welfare and Institutions Code section 706.

A literal reading of Welfare and Institutions Code section 706 requires a juvenile court to receive in evidence such relevant evidence as may be offered. Relevant evidence is defined in Evidence Code section 210 to mean (in pertinent part) ". . . evidence . . . having any tendency in reason to prove or disprove any disputed fact . . . ."

This definition of relevant evidence is manifestly broad. Evidence is relevant when no matter how weak it is it tends to prove a disputed issue. (*People* v. *Hess* (1951) 104 Cal.App.2d 642, 676 [234 P.2d 65].) Evidence may be relevant even though it is cumulative; thus, the only ban on cumulative evidence is found in Evidence Code section 352. (*People* v. *House* (1970) 12 Cal.App.3d 756, 773 [90 Cal.Rptr. 831] (conc. opn. of Kaus, P. J.).)

It has sometimes been said that evidence that is unduly time consuming is irrelevant; however, in his treatise on "Evidence," Witkin persuasively

---

[13]Rule 1492(b) of the California Rules of Court provides in relevant part, "The court shall receive in evidence and consider the social study and any relevant evidence offered by the petitioner, the child, or the parent or guardian."

[14]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

argues that consumption of time is not properly a part of ascertaining relevance: "There are occasional expressions to the effect that . . . evidence, though logically relevant (tending to prove a material matter), is so remote or conjectural, i.e., of so slight persuasive value, as to be legally irrelevant. And sometimes the exclusion of evidence for the policy reason of undue prejudice is placed on the ground of irrelevancy. [¶] This splitting of the relevancy doctrine into 'logical' and 'legal' phases has been strongly criticized as useless and misleading. The better view seems to be to consider relevancy a single concept, and to treat all exclusions of logically relevant evidence as exceptions based on policy; e.g., remote or conjectural matter may be relevant but is excluded because it would result in an undue consumption of time. [Citations.]" (1 Witkin, Cal. Evidence (3d ed. 1986) Circumstantial Evidence, § 287, pp. 257-258.)

From the foregoing it should be evident that if Welfare and Institutions Code section 706 were construed literally to mandate the admission of all relevant evidence, the result would be to sanction an enormous waste of time in dispositional hearings, where juvenile court judges would be powerless to exclude cumulative evidence or time-consuming evidence of marginal probative value. In this age of fiscal restraint and of overburdened courts, we cannot believe the Legislature intended such a result, which, in our view, would be absurd. The language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272]; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; see *California School Employees Assn.* v. *Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) Rather, whatever is necessarily implied in a statute is as much a part of it as that which is expressed. (*Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 771 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214].) We shall conclude Welfare and Institutions Code section 706 impliedly incorporates Evidence Code section 352.

"By enacting Evidence Code section 352, the Legislature gave the court the means to facilitate judicial economy. This section expressly gives the trial court discretion to exclude evidence '. . . if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of . . . confusing the issues . . . .' [Citation.]" (*DePalma* v. *Westland Software House* (1990) 225 Cal.App.3d 1534, 1544 [276 Cal.Rptr. 214].) Evidence Code section 352 applies "across the board" to all criminal proceedings, even after the enactment of article I, section 28, of the California Constitution. (*People* v. *Castro* (1985) 38 Cal.3d 301, 306-313 [211 Cal.Rptr. 719,

696 P.2d 111].) Evidence Code section 352 is perhaps the most valuable day-to-day tool available to our busy trial courts. From the viewpoint of the juvenile court judge, conducting a dispositional hearing without Evidence Code section 352 would be like driving a bus without brakes. We shall not presume the Legislature stripped the juvenile court of this crucial tool in the conduct of dispositional hearings. Rather, Evidence Code section 352, reasonably implied in Welfare and Institutions Code section 706, was available to the juvenile court in this case.

To be sure, the juvenile court did not expressly cite Evidence Code section 352 in its ruling precluding cross-examination of the probation officer, but that fact is immaterial. ■ The trial judge need not expressly weigh prejudice against probative value or even expressly state that he or she has done so. (*People* v. *Crittenden* (1994) 9 Cal.4th 83, 135 [36 Cal.Rptr.2d 474, 885 P.2d 887].) No "magic words" are necessary to show an appropriate exercise of discretion under Evidence Code section 352. (*Burns* v. *20th Century Ins. Co.* (1992) 9 Cal.App.4th 1666, 1674 [12 Cal.Rptr.2d 462].) What is important is that the record manifest the trial court's exercise of discretion available under Evidence Code section 352. (*Burns, supra,* 9 Cal.App.4th at p. 1674; *People* v. *Garrett* (1987) 195 Cal.App.3d 795, 801 [241 Cal.Rptr. 10]; *People* v. *Johnson* (1987) 193 Cal.App.3d 1570, 1577 [239 Cal.Rptr. 190].)

■ Here, the record shows an appropriate exercise of discretion for two reasons. First, the court engaged in a lengthy colloquy with counsel over the propriety of putting the probation officer on the stand. Second, the juvenile court had "here in front of me" the opinion of our Supreme Court in *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]. That case held an adult criminal court had *discretion* to deny cross-examination of a governmental employee who had prepared a diagnostic report. (*Id.* at p. 756.) "Since the *Arbuckle* decision was the crucial case to control the issue before the court, it is reasonable to assume that the court read all applicable portions of the case, including page 756 which set forth the discretionary language." (*People* v. *Campo* (1987) 193 Cal.App.3d 1423, 1432-1433 [239 Cal.Rptr. 44].)[15]

We conclude the juvenile court properly exercised its discretion to prohibit cross-examination of the probation officer. The minor has shown no violation of statute.

■ The minor also contends preclusion of cross-examination of the probation officer denied him due process of law. We cannot agree.

---

[15]Here, the record shows the juvenile court also read *Campo*, which emphasized the discretionary nature of the court's decision to allow cross-examination of the preparer of a CYA report. (*People* v. *Campo, supra,* 193 Cal.App.3d at pp. 1432-1433.)

As the minor acknowledges, courts that have considered claims analogous to the minor's in the context of adult criminal proceedings have uniformly rejected them. (*People* v. *Smith* (1985) 38 Cal.3d 945, 960 [216 Cal.Rptr. 98, 702 P.2d 180]; *People* v. *Arbuckle, supra,* 22 Cal.3d at pp. 753-756; see also *People* v. *Campo, supra,* 193 Cal.App.3d at pp. 1425-1433 [CYA commitment of juvenile tried as adult].) The minor maintains that these authorities are distinguishable because they construe sections 1203, subdivision (b), and 1204, which differ materially from Welfare and Institutions Code section 706.[16] He also maintains that the policy considerations on which these authorities rely are inapplicable to juvenile proceedings. We disagree with both contentions.

As we have explained, we cannot read Welfare and Institutions Code section 706 so as to compel admission of all "relevant and material evidence" without regard to Evidence Code section 352; therefore we are not persuaded that the differences in wording between Welfare and Institutions Code section 706 and the corresponding Penal Code provisions construed in *Arbuckle, Smith,* and *Campo, supra,* render those authorities inapposite. Accordingly, we look to the rationales underlying the holdings of *Arbuckle* and *Campo* and consider whether the minor has shown any good reason to find those rationales inapplicable in the juvenile context.[17]

In *Arbuckle, supra,* our Supreme Court held that neither the Penal Code provisions at issue nor the federal and state Constitutions grant a defendant the right to compel the testimony at a sentencing hearing of a government official who has prepared a diagnostic report to assist the trial court. The right of confrontation, on which the defendant sought to rely, is sufficiently protected by the trial court's required scrutiny of the report's written diagnosis and recommendation. (*People* v. *Arbuckle, supra,* 22 Cal.3d at pp. 753-754.) Such a report is inherently reliable despite its inclusion of hearsay, because it is "made pursuant to a court order by expert, objective government personnel in pursuit of their official duties." (*Id.* at p. 755.)

The court further held that "fundamental fairness" does not entitle a defendant to cross-examine the author of a diagnostic report as a matter of

---

[16]These Penal Code provisions require (1) the preparation of a probation report where a defendant has been convicted of a felony and is eligible for probation (§ 1203, subd. (b)), and (2) a probation and sentencing hearing at which circumstances relevant to the court's sentencing choice "shall be presented by the testimony of witnesses" in open court or by deposition. (§ 1204.) They do not specify, as does Welfare and Institutions Code section 706, that the court "shall receive . . . other relevant and material evidence" in addition to the probation report.

[17]*Smith* does not offer an independent rationale, but simply relies on *Arbuckle.* (*People* v. *Smith, supra,* 38 Cal.3d at pp. 960-961.)

due process. A defendant may challenge factual statements in such a report by "presenting his own evidence," but to allow him to do so by cross-examining the author of the report or by challenging the methods used therein would produce "a full hearing on collateral issues emanating in an ever-widening circle from the central issue—the proper sentence to be imposed . . . ." (*People* v. *Arbuckle, supra,* 22 Cal.3d at p. 755.)

Finally, the court noted that to give a defendant the right to cross-examine the authors of diagnostic reports would impose a "drain on time and public resources": if every defendant could subpoena all persons involved in preparing such reports, they would have little time to do anything but travel to and from courts and appear in court. (*People* v. *Arbuckle, supra,* 22 Cal.3d at p. 756.) Therefore, "[a]bsent a contrary legislative command, it should be within the sound discretion of the trial court to determine those instances when in-court testimony is required to provide a fundamentally fair proceeding." (*Id.* at pp. 755-756.)

In *Campo, supra,* the defendant, committed to CYA, sought to distinguish *Arbuckle,* arguing: (1) reports prepared to determine amenability to CYA are different from those prepared for adult sentencing, and (2) the burden on the government would not be so great as in an adult sentencing proceeding because the Youth Authority is smaller than the Department of Corrections and has a different philosophy. (*People* v. *Campo, supra,* 193 Cal.App.3d at p. 1428.) The trial court was not persuaded. (*Id.* at p. 1429.)

The appellate court held that the rationale and holding of *Arbuckle* applied here. Like the diagnostic report in *Arbuckle,* the CYA amenability study was performed by expert, objective government personnel pursuant to their official duties. (*People* v. *Campo, supra,* 193 Cal.App.3d at p. 1432.) And despite the differences in size and philosophy between the juvenile and adult systems, the juvenile system would be just as severely burdened by granting juvenile defendants automatic subpoena powers over personnel who prepare CYA amenability studies as the adult system would have been by a similar holding in *Arbuckle.* (*Ibid.*)

Here, as in *Arbuckle* and *Campo,* the report (or social study) at issue is inherently reliable because it was prepared by an objective, expert government employee in the course of her duties. A minor in a Welfare and Institutions Code section 602 dispositional proceeding has the same right to challenge factual statements in a report by presenting his own witnesses as did the defendant in *Arbuckle.* And, as noted in *Arbuckle,* to allow a minor the right to cross-examine the officer who prepared the report could easily produce "a full hearing on collateral issues emanating in an ever-widening

circle from the central issue[,] the proper sentence to be imposed" (*People* v. *Arbuckle, supra,* 22 Cal.3d at p. 755)—a concern which is at the heart of the trial court's discretion to exclude evidence under Evidence Code section 352.

The minor attempts to distinguish *Arbuckle* and *Campo* as to the burden imposed on the government by compelling the testimony of probation officers: he points out that the reports discussed in those cases were diagnostic studies by teams of experts who would all have had to be subpoenaed, whereas here we have an investigative report by a single person who was already present in the courtroom. These differences do not yield a principled basis for evading the logic of *Arbuckle* and *Campo*. The probation officer will not necessarily be present at every Welfare and Institutions Code section 602 dispositional hearing, and probation officers, like the experts responsible for the reports discussed in *Arbuckle* and *Campo*, have heavy caseloads on which their capacity to work would be compromised if they were subject to subpoena and cross-examination in every case where they have filed a social study. Thus, even if the burden on the government from adopting the minor's proposed rule might be less than in the *Arbuckle* or *Campo* situation, this difference would not be so great as to require a different result.

The minor also asserts that "general principles of due process require cross-examination be made available upon request," relying on *In re Malinda S.* (1990) 51 Cal.3d 368 [272 Cal.Rptr. 787, 795 P.2d 1244]. *Malinda S.* is inapposite because it discusses jurisdictional hearings under Welfare and Institutions Code section 300. As we have explained, the evidentiary rules applicable to jurisdictional hearings in juvenile cases differ substantially from those applicable to dispositional hearings. ▮ By the same token, due process requirements for the two types of hearing also differ. They are necessarily most stringent at the jurisdictional phase of a juvenile proceeding, whether under section 300 or Welfare and Institutions Code section 602, because the liberty interests of the minor (and of the minor's parent or guardian) are strongest in this phase of the proceeding. Once the juvenile court has determined that the minor comes within section 300 or section 602, the minor no longer has a protectable interest in being free from the court's jurisdiction; due process then requires only that the court properly consider all factors relevant to its dispositional choice. ▮ Thus it does not help the minor's due process argument that parents or guardians have the right to cross-examine a probation officer or social worker who submits a report to the juvenile court in a section 300 jurisdictional hearing. (*In re Malinda S., supra,* 51 Cal.3d at p. 376; Cal. Rules of Court, rule 1450(c).)[18]

Finally, the minor asserts that even if there is no general due process right to cross-examine the probation officer under Welfare and Institutions Code

---

[18]The minor proposes that we determine the requirements of due process here by applying the "flexible balancing standard" defined in *Malinda S.* (*In re Malinda S., supra,* 51 Cal.3d at

section 706, "fundamental fairness" required that he be allowed to do so here because the social study contained substantial inaccuracies and appeared to have been based on little if any investigation. We are not persuaded. The juvenile court struck portions of the social study shown to be inaccurate. As the minor acknowledges, he was allowed to call as witnesses two of the key persons relied on by the probation officer in writing her report, the minor's mother and the vice-principal of his school. Under *Arbuckle*, this is all the due process required. (*People* v. *Arbuckle, supra*, 22 Cal.3d at p. 756.)

The juvenile court did not err in precluding cross-examination of the probation officer.

## VIII, IX*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The enhancements imposed pursuant to sections 186.22 and 12022 are hereby stricken. The juvenile court shall prepare an amended commitment order reflecting the striking of these enhancements and shall forward a copy of the same to CYA. In all other respects, the judgment (order) is affirmed.

Davis, J., and Brown, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 1995.

---

p. 383.) Because the minor has failed to show that *Malinda S.* is apposite, we see no need to apply its balancing test. We are satisfied that the discussion of due process in *Arbuckle, supra*, and *Campo, supra*, gives the correct approach to the problem posed in this case.
    *See footnote, *ante*, page 1838.