Filed 5/20/15  P. v. Matz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065828 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD248753) |
| RICHARD MATZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Sharon B. Majors-Lewis, Judge.  Affirmed, as modified.

Alissa L. Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Richard Matz guilty of burglary, but acquitted him of grand theft. Codefendant, James Daniel Napuunoa, pleaded guilty to both charges before trial.  The

trial court granted Matz felony probation on various conditions, including that he "[h]ave no contact with the co-defendant[]" Napuunoa. Matz appeals, contending the trial court prejudicially erred by admitting surveillance video of an earlier burglary involving only Napuunoa. He also asserts the probation condition that he "[h]ave no contact with the co-defendant[]" is unconstitutionally vague because it lacks a knowledge component with respect to the type of contact prohibited. We reject Matz's first contention, but modify the probation condition to include an express knowledge requirement.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, the La Quinta Inn located in Old Town San Diego, California underwent renovations. During the renovations, televisions were being stored in a locked storage room in the underground garage. On March 16, surveillance video depicted a man, later identified as Napuunoa, back a vehicle up to the storage room, go into the room, load nine televisions from the room into the vehicle and drive away. Over Matz's objections, the prosecution showed this video to the jury.

Four days later, surveillance video captured Napuunoa arriving at the La Quinta Inn storage area in a white GM pickup truck driven by Matz. Before trial, the surveillance video of this incident was lost. Four witnesses watched the video before it was lost and testified as to its contents at trial. These witnesses were Karina Winkler, the Inn's general manager, Juan Serrano, an Inn maintenance employee, John Larson, the responding officer, and Brandon Gaines, the detective assigned to investigate the incidents.

2

The video showed a man, later identified as Matz, park the pickup truck in front of the storage room. Napuunoa then got out of the passenger side of the truck. After he was unable to open the door to the storage room, he kicked the door open. Napuunoa took one television out of the storage unit and put it in the back of the truck. When Napuunoa returned to the storage unit a second time, Matz exited the truck and moved towards the back of the truck, outside the view of the surveillance cameras. Matz remained out of view at the back of the truck, while Napuunoa made two more trips into the storage unit, taking four more televisions and loading the televisions into the back of the truck. Winkler stated that Matz did not appear upset or surprised by Napuunoa's actions, but appeared to be helping Napuunoa. Larson also noted that Matz did not appear upset or surprised by Napuunoa's actions. The men then entered the vehicle and Matz drove it away.

As the vehicle drove away, a video camera captured the license plate number and the televisions in the back of the truck. Police later determined that the truck was registered to Matz's father, Richard Matz, Sr. At trial, Matz, Sr. testified that Matz had possession of the truck on the date of the burglary. The jury was shown five still photographs taken from the surveillance video before it was lost. Two photographs depicted Napuunoa trying to open the door to the storage unit. One photograph depicted Matz exiting the truck, another depicted the license plate on the back of the truck and one depicted the truck driving towards the storage unit.

DISCUSSION

## I.  *Evidence of Earlier Burglary*

Matz contends the trial court erred in admitting any evidence of the March 16 burglary involving only Napuunoa, including the surveillance video footage, because it was irrelevant.  He claims admission of the evidence prejudiced him as a reasonable probability existed he would have obtained a more favorable result absent the error, even if that meant a hung jury.  We disagree; however, even assuming the trial court erred in admitting the evidence, the assumed error was harmless.

Only relevant evidence is admissible (Evid. Code, § 350), with relevant evidence defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210.) "This definition of relevant evidence is manifestly broad.  Evidence is relevant when no matter how weak it is it tends to prove a disputed issue."  (*In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843.)  A court has broad discretion in determining the relevance of evidence.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1166-1167.)  We will not disturb the exercise of that discretion absent "'a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'"  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Here, Matz was charged with burglary on the theory that he aided and abetted Napuunoa.  "[A]n aider and abettor is a person who, 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids,

4

promotes, encourages or instigates, the commission of the crime.'" (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) While the actual perpetrator must have whatever mental state is required for the charged crime, an aider and abettor must "act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.) The intent required for aiding and abetting may be established by circumstantial evidence (*id.* at pp. 558-559), including the defendant's presence at the scene of the crime, companionship, and conduct before and after the offense (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409). It is unnecessary for the primary actor to expressly communicate his criminal purpose to the defendant, as that purpose may be apparent from the circumstances. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531-532.)

Because the actual perpetrator must have the mental state required for the crime charged, Napuunoa's intent to commit the second burglary was a fact the prosecution needed to prove to convict Matz of aiding and abetting the burglary. (*People v. Beeman*, *supra*, 35 Cal.3d at p. 560.) Matz claims he never contested Napuunoa's intent to commit the second burglary. He presumably makes this argument because Napuunoa's actions, as described by the witnesses that viewed the lost surveillance video, strongly suggest Napuunoa harbored the requisite intent to steal.

Nevertheless, to convict Matz of aiding and abetting burglary, the jury needed to determine whether Napuunoa committed the crime of burglary, which necessarily required the jury to determine whether Napuunoa harbored the requisite intent. (See

5

*People v. Thornton* (2000) 85 Cal.App.4th 44 [defendant's failure to contest an element of the drug charge he was facing did not preclude the prosecution from presenting evidence as to that element].)  Here, Napuunoa's earlier burglary was circumstantial evidence of his intent to steal during the second burglary involving Matz.  Thus, the evidence of the earlier burglary was, at most, cumulative and its admission was harmless error.  (*People v. Houston* (2005) 130 Cal.App.4th 279, 296 ["The admission of cumulative evidence, particularly evidence that is tangentially relevant to establishing a defendant's guilt has been found to be harmless error."])

Moreover, we fail to see how admission of evidence regarding Napuunoa's earlier burglary prejudiced Matz as video of the incident revealed Matz did not participate in the crime.  Additionally, the remaining evidence amply proved Matz's intent to facilitate Napuunoa's commission of the second burglary.  Namely, photographs taken from the lost surveillance video revealed, among other things, Matz getting out of the truck, Napuunoa trying to open the storage unit and the truck's license plate.  The testimony of Matz's father established that Matz had possession of the truck used in the burglary.  Testimony of the witnesses that viewed the lost surveillance footage established that after Napuunoa loaded the first television into the back of the truck, Matz exited the truck and moved to the back of the truck.  Although Matz could not be seen in the video, he remained at the back of the truck while Napuunoa continued to load more televisions into the truck.  Both men then entered the truck and drove away.  A reasonable inference from this evidence is that Matz facilitated the burglary by helping Napuunoa load the stolen

6

televisions into the truck. Accordingly, any error in admitting the evidence of Napuunoa's earlier burglary was harmless.

## II. *Probation Condition*

As part of his terms of probation, the trial court ordered Matz to have "no contact" with Napuunoa. Matz contends this term is unconstitutionally vague and must be either stricken or modified to include a knowledge requirement because Matz could unwittingly violate the order. To support this argument, he cited a newspaper article where a man subject to a restraining order preventing contact with his ex-girlfriend was arrested for sending his ex-girlfriend an email invitation to join an electronic social network where the invitation was automatically generated and not from the defendant. The Attorney General argues a reasonable person would understand the condition to require an awareness that the contact is taking place, but states if we disagree, the appropriate remedy is to modify the condition to include an express knowledge requirement and affirm the judgment as modified.

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) Probation conditions must be sufficiently precise for probationers to know what is required of them and for courts to determine whether a condition has been violated. (*Ibid.*) Courts often order modification of probation conditions to incorporate a scienter requirement where a probationer could unknowingly engage in the prohibited activity. (*People v. Moses* (2011) 199 Cal.App.4th 374.)

7

The issue whether no-contact probation conditions must be modified to explicitly include a knowledge requirement is currently pending before the California Supreme Court. (See *In re A.S.* (2014) 227 Cal.App.4th 400, review granted Sept. 24, 2014, S220280.) Pending resolution of this issue by our high court, the addition of an express scienter requirement will eliminate any potential for vagueness. Accordingly, we will order the condition modified to incorporate an express knowledge requirement.

## DISPOSITION

Probation condition number 6g is modified to read: "have no knowing contact with co-defendant(s)." As modified, the judgment (order of probation) is affirmed. The trial court is directed to prepare an amended probation order consistent with this opinion and to forward a copy to defendant and the probation department.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.

8