Filed 11/20/14  P. v. Erhardt CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C071688 |
| Plaintiff and Respondent, | (Super. Ct. No. P09CRF0353) |
| v. | |
| FRITZ ALFRED ERHARDT, | |
| Defendant and Appellant. | |

A jury convicted defendant Fritz Alfred Erhardt of continuous sexual abuse of a child and two counts of committing lewd acts on a child under 14 years of age.  (Pen. Code, §§ 288.5; 288, subd. (a).)  Defendant contends the trial court committed prejudicial error by:  (1) denying admission of lay opinion testimony that his character was inconsistent with being a child molester; and (2) denying his request for a second psychiatric evaluation.  Alternatively, he claims:  (3) the cumulative prejudicial effect of the court's errors require reversal; and (4) the court erred by denying him probation.  We disagree with his contentions and affirm the judgment.

1

FACTS

The victim, defendant's granddaughter, lived with defendant off and on from when she was seven or eight years old until she was 12. She stayed at defendant and his wife's home along with her mother and two brothers. Her family slept in one bedroom, defendant and his wife slept in another. On many nights, the victim slept in the living room on the couch or on the floor because she liked to stay up and watch TV. When she was seven years old, she and defendant would be on the couch together, and defendant would tickle her back. Then he would reach around and grope her breasts. Defendant would also have her put her hand down his pants and fondle his testicles. The victim believed defendant had touched her breasts at least 10 or more times. She remembered it happened "pretty often and a lot."

When the victim was around nine years old, defendant began having her masturbate him. It happened at night while she was sleeping in the living room and the rest of the family was upstairs. She would be asleep, but then would wake up to defendant using her hand to masturbate himself. The victim would hear defendant gasping or moaning, and he would ejaculate into her hand.[1] During these times, the victim would pretend to be asleep and would wait until defendant was done. The victim stated this occurred around four times a week, and possibly on the weekend if she was at the home, with some breaks when she and her family were moving around and not living there. The victim remembered defendant telling her, " 'If you tell anyone, then I will go to jail,' " or " 'I'll get in trouble.' "

The last incident occurred when the victim was 12 years old. While sleeping on the living room floor, she awoke to defendant tugging on her hair with his knees in her

---

[1]     The victim did not know the word "ejaculation" until it was explained to her in an interview with a sheriff's deputy. When the incidents happened, she just knew that something wet came out of defendant's penis and onto her hand.

back. Defendant was using her hair to masturbate. She pretended to be asleep. She heard defendant moan and gasp, then saw him pull up his pants when he was done. She laid there until he went upstairs, and then went into the bathroom.

On July 10, 2009, while she was 12, the victim and her older brother were playing outside. Defendant came outside and told them what they were doing was wrong. As defendant was walking away, the victim snapped back and said, "What you do at night is wrong." The victim did not know if defendant heard her. The victim started crying and told her brother she was being molested. She asked him to tell their mother.

The victim's brother corroborated this incident. He remembered that on July 10, 2009, defendant walked away after telling them what they were doing was wrong. Then the victim turned around and said, "What you do at night is wrong." The brother said defendant had gone inside before the victim made that remark. The brother told his mother, G., what his sister had told him. Afterward, the family packed up and left defendant's house.

T. is the victim's father. He and G. were divorced in 2005. They attempted to reconcile in 2006 and they lived together then, but since then they have not lived together. At the time of trial, the victim, her brother, and a son born to G. after the divorce who was not T.'s biological child lived with T.

On July 10, 2009, G. visited with T. and told him what the victim had told her. The children were at someone else's house. After G. left, T. picked up the victim. She told him what had happened. T. then took her to the police department. The police directed him to the county sheriff. He went home, and a sheriff's deputy arrived there. T. and the victim spoke with the deputy.

On July 16, T. and the victim spoke with someone at the district attorney's office. A few days later, he met with a detective and placed a call to defendant to see if he would confess. In the call, defendant neither admitted nor denied the molestations.

*Defense*

Regina Sharp was defendant's neighbor and friend.  She had worked with him at Becker's Gun Shop for about three years where they would dress up and reenact different scenarios of the 1850's for children.  She knew defendant to be an honest man.  She had also been a neighbor to G., T., and their children at times.

On July 10, 2009, G. and the victim visited Sharp at her home.  G. and the victim were acting giddy, not normal, and not right.  They told Sharp what had happened to the victim.  G. stayed at the house for about two hours.  The victim stayed for about four or five hours.  Sharp's husband contacted T.

G., recently remarried, testified that after the victim made the allegations, she continued to live in defendant's home except for an eight-day period around the time defendant was arrested in August, when she and the children lived in hotels.  For the first week after the victim's report, the victim lived with T.  G. continued to live in defendant's home with her children because she had nowhere else to go.  During that time, she did not isolate the victim from any part of the home, but she kept a closer eye on her.  The victim continued her routines of playing in the yard and next door at defendant's mother's home, and having friends over to swim or spend the night.

G. had lived with defendant and her mother off and on for about three years prior to the victim's report.  Defendant wanted G. to leave and get her own home for her and the children.  G. and defendant had two or three major discussions about this, one of them heated.  The victim was present during the heated discussion.

G. stopped living at defendant's home when she came back from rehab in 2010.  At the time of trial, she was on probation for child endangerment.  She also has a prior conviction from 1998 for grand theft.

Margaret Erhardt, defendant's wife, testified.  She said G. and the children moved in and out of her and defendant's home many times during the four years leading up to

4

2009.  The children were allowed to sleep in the living room, but not on the couch.  They could sleep on the floor in sleeping bags.  But by 2009, the children were allowed to sleep on the couch if they asked.  Bedtime was 9:00 p.m., and Margaret was aware of when and where they went to bed.  She could hear their bedroom door close.  The door to the bedroom where G. and the children slept and the door to the bedroom where defendant and Margaret slept were closed every night.  By the summer of 2009, the victim preferred to sleep outdoors.  If it became too cold, she would pull herself in and sleep on the couch.

An air vent ran from the living room to Margaret's bedroom.  Through that vent, she could hear what was happening in the living room while in her bedroom.  She could hear people talk and the television, and she could see light reflecting from there.  If someone went downstairs at night, she would hear the light click on.

Usually, Margaret went up to bed first before defendant.  She would watch TV for 30 minutes to an hour and often fall asleep.  Then defendant would come into the room, and she would hear him enter.  She was a light sleeper.  She was never aware of the victim or defendant getting up in the middle of the night and watching TV downstairs.  Defendant was a heavy sleeper and he snored, and she was not aware of him ever leaving the bedroom in the middle of the night except to wake and go to work early.

Margaret had a great relationship with the victim.  They talked a lot and had an open relationship.  They had "alone time" together shopping and doing other things together.  Sometimes, when defendant had a late meeting, the victim would sleep with Margaret in her bed.  At no time did the victim tell Margaret she was having a problem with defendant or express reluctance about being around him.  Margaret has always known defendant to be an honest man.  She also has known the victim to lie.

At the time of trial, Darryl Kreuzberg had known defendant for 20 years.  They had worked together in business and socialized together with their wives.  In Kreuzberg's

5

opinion, defendant is the most trustworthy person he has ever known, and absolutely believes him to be an honest person.

Kreuzberg first heard about the allegations against defendant during the weekend of July 4th, 2009. Both defense counsel and the prosecutor asked Kreuzberg if he was certain he heard of the allegations on the July 4th weekend. Kreuzberg said he was absolutely certain. He runs a raft tow service on the American River. He was on a jet ski towing rafts when the victim's father, T., waved at him from the beach. He pulled over, and T. said, "Hey, guess what?" Kreuzberg said, "What's that?" T. said, "Well, [defendant] is going to get arrested for child molestation." On cross-examination, Kreuzberg said T. told him "with a big smile, that [defendant] is going to jail for molestation." Kreuzberg asked who was molested, and T. said it was the victim, who was floating in a small raft next to where they were talking. Kreuzberg avoided T. after that.

Defendant testified in his own behalf. He denied touching the victim's breasts and using her hand and her hair to masturbate. He also denied ever saying to the victim something like, "Don't tell anyone or I'll go to jail."

Defendant learned of the accusations on July 11, 2009, from his wife. He also spoke with his son, who told him of the accusations and recommended he seek an attorney. Defendant met with attorneys the next week. They told him to expect a telephone call from T., and they instructed him not to talk about the allegations with anyone or to answer any questions. Defendant received the phone call from T. on July 19.

*Sentence*

The trial court denied defendant probation and sentenced him to a prison term of 16 years, calculated as follows: The middle term of 12 years for continuous sexual abuse (Pen. Code, § 288.5); plus consecutive one-third the middle terms, or two years each, for two counts of lewd acts upon a child under the age of 14 (Pen. Code, § 288, subd. (a)).

6

DISCUSSION

I

*Lay Opinion Character Evidence*

Defendant sought to introduce under Evidence Code section 1102[2] the opinion testimony of four of his acquaintances who had observed him with children. He sought their opinions that, based on their observations, defendant was not a sexual deviant or prone to molesting children. The trial court denied admitting the evidence, ruling the proposed opinion testimony could be given only by experts, was not relevant, and was unduly prejudicial under section 352. Defendant contends the trial court erred when it refused to admit the evidence. We conclude the court erred but we also conclude the error was not prejudicial.

Section 1102 provides an exception to the general rule prohibiting the use of character evidence to prove a defendant's conduct on a specific occasion. (See § 1101, subd. (a).) Under section 1102, "evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation" is not made inadmissible by section 1101 in a criminal action if the evidence is "[o]ffered by the defendant to prove his conduct in conformity with such character or trait of character." (§ 1102, subd. (a).)

"This exception allows a criminal defendant to introduce evidence, either by opinion or reputation, of his character or a trait of his character that is 'relevant to the charge made against him.' [Citation.] . . . In appropriate cases, such circumstantial evidence 'may be enough to raise a reasonable doubt in the mind of the trier of fact concerning the defendant's guilt.' ([Citation]; see also *Michelson v. United States* (1948)

_____

[2]     Undesignated references to sections are to the Evidence Code.

335 U.S. 469, 476 [93 L.Ed. 168, 174].)" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1305 (*McAlpin*).)

Contrary to the view expressed by the trial court, opinion evidence of a defendant's character as not being a sexual deviant may be introduced by lay testimony. (*McAlpin, supra*, 53 Cal.3d at p. 1305.) To be admissible, the lay opinion testimony must satisfy at least four conditions. First, the evidence must be relevant. "Such evidence is relevant if it is inconsistent with the offense charged -- e.g., honesty, when the charge is theft -- and hence may support an inference that the defendant is unlikely to have committed the offense." (*Ibid*.)

Second, the character evidence may be introduced by lay testimony only to the extent the opinion is based on the witness's own perception. (*McAlpin, supra*, 53 Cal.3d at pp. 1306-1307.) If the lay witness offers an opinion that goes beyond the facts he observed, the opinion is inadmissible. (*Id*. at p. 1308.)

Third, the defendant's character trait sought to be established may not be proven by evidence of specific acts of " 'nonmolestation,' " but instead may be shown based on the witness's long-term observation of defendant's course of consistently normal behavior. (*McAlpin, supra*, 53 Cal.3d at pp. 1309-1310.)

And fourth, of course, the evidence must not be unduly prejudicial. The trial court may exclude the lay opinion testimony if it is unduly prejudicial under section 352. (*McAlpin, supra*, 53 Cal.3d at p. 1310, fn. 15.)

The *McAlpin* court applied these rules to the facts before it. In that case, the defendant was charged with committing lewd conduct upon a child under the age of 14. (*McAlpin, supra,* 53 Cal.3d at p. 1294.) Defendant sought to introduce the opinions of three lay witnesses pursuant to section 1102 as to whether he was a sexual deviant, or, as he defined it, a " 'person of lustful or lewd conduct with children.' " One witness was a close male friend of defendant's from his college days who had often double-dated with him. The other two witnesses were women who had dated defendant for approximately

8

six months, had been sexually intimate with him, and who each had a daughter  All three proposed to testify that in their opinion, defendant was not a sexual deviant.  The male witness based his opinion on defendant's assertedly normal sexual contact with adult women.  The two women witnesses based their opinions on two observations:  their assertedly normal personal sexual experiences with defendant, and their observations of defendant's conduct with their daughters during their relationships.  The trial court excluded all of the evidence.  (*McAlpin, supra*, 53 Cal.3d at pp. 1304-1305, 1308.)

The Supreme Court agreed with the trial court's decision in part.  It affirmed the court's denial of the male witness's testimony because his testimony was not based on any personal observation of defendant's conduct with children.  It also affirmed the court's denial of the female witnesses' testimony to the extent they based their opinion on their private sexual experiences with defendant.  (*McAlpin, supra*, 53 Cal.3d at pp. 1308-1309.)  None of this testimony was based on personal observations that were relevant to disproving the defendant did not engage in lewd conduct with children.

However, the Supreme Court ruled the trial court should have admitted the female witnesses' opinion testimony to the extent it was based on their personal observations of defendant's conduct with their daughters.  "The opinion of the women character witnesses . . . was also based on their observation of defendant's conduct with their daughters.  According to the offer of proof, the women proposed to testify that in the course of their relationship with defendant they observed his conduct with their daughters and saw no unusual behavior either by defendant or by their daughters, and that it is their opinion, based on those personal perceptions, that defendant is not a person given to lewd conduct with children.  Because the latter conclusion of the witnesses was based on their direct observation of defendant's behavior with their daughters, it was both a proper subject of lay opinion testimony and relevant to the charge of child molestation." (*McAlpin, supra*, 53 Cal.3d at p. 1309.)

9

In addition, the female witnesses' testimony was based on observations made throughout the course of their relationships with defendant, not just specific instances of conduct. "A fair reading of the offer of proof shows that the women witnesses would not have limited their testimony to specific instances in which defendant had the opportunity to, but did not, molest their daughters. Instead, the witnesses proposed to testify that they observed defendant's behavior with their children throughout the course of their relationship with him, and their opinion that he is not a person given to lewd conduct with children arose from that experience as a whole. Thus viewed, the proffered testimony was intended to prove the relevant character trait not by specific acts of 'nonmolestation,' but by the witnesses' opinion of that trait based on their long-term observation of defendant's course of consistently normal behavior with their children. The trial court should have allowed such testimony." (*McAlpin, supra*, 53 Cal.3d at pp. 1309-1310, fns. omitted.)

We apply these rules here. Defendant sought at various times to introduce the opinion testimony of four lay witnesses. Susan Wayland was a retired teacher who had known defendant for about five years and had observed him with school groups and visitor groups at Marshall Gold Discovery State Historic Park and Sutter's Fort State Historic Park. She had never seen defendant engage in any inappropriate behavior, and on that basis would have testified he lacked the character trait of a sexual deviant.

Ken Simmons, a retired superintendent in charge of Marshall Gold Discovery State Historic Park, had worked alongside defendant teaching hundreds of interpretive classes to park visitors and school groups. During those times, he never saw defendant engage in any inappropriate behavior.

Sandi Morgan, one of the victim's former school teachers, had worked around defendant while he worked with children, and she had never seen him engage in any inappropriate behavior. Based on her observations, she would have testified defendant was not inclined towards sexual molestation.

10

Jerry Morman had known defendant and his family for 15 years. He was a business owner at the Coloma gold discovery site, and he had seen defendant take children on tours. He never saw anything inappropriate take place between defendant and children.

This evidence should have been admitted. It was relevant, was based on the witnesses' long-term observations and on specific acts of nonmolestation, and was not unduly prejudicial. The evidence was relevant because it supports an inference that defendant was unlikely to commit the charged offenses by showing he did not treat children inappropriately. It could be used to establish a lay person's opinion of defendant's character traits towards children that contradicted those implied by the criminal charge against defendant.

The Attorney General asserts the evidence was not relevant because the witnesses "did not observe [defendant] interacting one on one with a child, in his personal residence, under the cover of darkness while others slept." Under this standard of relevance, no evidence of a character trait towards child molestation would likely ever be admitted, as the only possible observers of defendant's actions would have been the victim.

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) "Evidence is relevant when no matter how weak it is it tends to prove a disputed issue. [Citation.]" (*In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843.) The proposed opinion evidence, admittedly weak, nonetheless is relevant to proving defendant's character as a child molester, and should have been admitted. The evidence was based on the witnesses' long-term observations of defendant interacting with children from which they could develop an opinion of whether he had a trait of engaging with children inappropriately. That they did not see defendant engage with children individually in a private home went to the evidence's weight.

11

The Attorney General also contends the trial court correctly excluded the evidence as unduly prejudicial under section 352. Under that statute, the trial court in its discretion may exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The Attorney General contends the evidence had no probative value and would have only misled the jury.

We review the trial court's decision under section 352 for an abuse of discretion (*McAlpin, supra*, 53 Cal.3d at p. 1310, fn. 15), and we agree with defendant that discretion was abused in this instance. The evidence's probative value was light, but nothing in the record indicated admitting the evidence would unduly consume time, inflame the juror's passions, confuse the issues, or mislead the jury. The defendant's character trait of not being a sexual deviant is a relevant issue in a child molestation case, and admitting evidence on that point would not confuse that issue with the other issues before the jury. Addressing a relevant issue is not misleading the jury.

We thus must determine whether the decision not to admit the lay opinion testimony was prejudicial error. Defendant asserts if the trial court had admitted the proposed testimony, there was "at least a reasonable chance" he would have obtained a more favorable outcome. This is not the correct standard for determining prejudicial error. We review this particular error under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*McAlpin, supra*, 53 Cal.3d at pp. 1311-1313.) Under that standard, we review the entire cause to determine if it is "reasonably probable" defendant would have received a more favorable judgment had the evidence been admitted. (*People v. Watson, supra,* 46 Cal.2d at p. 836.)

We find no prejudicial error. The witnesses' testimony carried very little weight. Even if it had been admitted, it is not probable defendant would have obtained a more favorable judgment. Character evidence of defendant's honesty and trustworthiness was

12

admitted, and the lay testimony would have added little to that. The lay witnesses observed defendant in public settings with groups of children. None of them observed defendant interacting with an individual child in a private or home setting over an extended period of time. Their testimony thus added little to the character evidence that was admitted of defendant being an honest and trustworthy person, or to outweigh the incriminating evidence. The victim's testimony was detailed and not contradicted. It was also supported inferentially by Margaret's testimony that defendant did not come up to bed for an hour or so after she went to bed and fell asleep. She may have heard defendant come into the room or people in the home get up at night, but the only witness who described defendant's behavior after she had gone up to bed was the victim. Because the proposed testimony would have added so little, we cannot say it was reasonably probable defendant would have received a more favorable judgment had the evidence been admitted.

## II

### *Request for Second Psychiatric Evaluation*

Defendant contends the trial court abused its discretion when it denied his request to have a second psychiatric evaluation for trial. We disagree.

The trial court authorized defendant to hire Dr. Eugene Roeder to conduct a psychiatric evaluation to determine defendant was not a pedophile. However, defense counsel informed the court that after conducting the examination, Dr. Roeder was unable to form an opinion as to whether defendant was a pedophile. Defense counsel stated "the doctor's report -- or the letter I got from him indicated that there was a problem on veracity. . . . But what results he did see seemed to indicate that [defendant] was not a pedophile." Counsel informed the court that defendant "evidently came across that he saw life through rose-colored lenses, and so the psychologist could not say whether the results were valid."

13

Counsel sought authority to hire a Dr. Schafer to conduct a second psychiatric evaluation of defendant. Counsel stated the second evaluation was necessary because Dr. Roeder "was unable to come to any conclusions due to some problems with the validity scores." Counsel requested $1,500 for the evaluation and its report.

The trial court denied this second application. It also denied defendant's request for a new trial which was based in part on the court's denial of the second application.

We conclude the trial court did not abuse its discretion by denying the second application. "Refusal to appoint a second expert to examine any particular issue will ordinarily not constitute abuse of discretion. [Citations.]" (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.) In this case, the court did not abuse its discretion because defendant had not been honest with the first expert. Counsel stated there had been a problem with veracity. If defendant was not going to be honest in a psychiatric evaluation, there was no foundation established to support approving a second evaluation. (See, e.g., *Collins v. Superior Court* (1977) 74 Cal.App.3d 47, 52 [no abuse of discretion where court reasonably finds an expert is not necessary].) The court was under no obligation to give defendant another chance at finding an expert when he was unwilling to participate honestly and fully in the examination.

III

*Cumulative Error*

Defendant contends the failure to admit the lay opinion testimony and the decision not to authorize a second expert constitute cumulative error. We disagree. The omission of the lay opinion testimony was not prejudicial error, and the decision not to authorize a second expert was not error at all. There was no cumulative error, and, as a result, defendant was not denied a fair trial. (See, e.g., *People v. Martinez* (2010) 47 Cal.4th 911, 968.)

14

IV

*Denial of Probation*

Defendant contends the trial court abused its discretion when it denied him probation. Assuming for purposes of argument only that defendant was eligible for probation, we conclude the trial court did not abuse its discretion.[3]

" 'A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' [Citation.] A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" *(People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.)

Here, the trial court considered all of the relevant facts bearing on the offense as well as on the defendant, and thus did not abuse its discretion by denying probation irrationally or arbitrarily. The court considered and found true certain factors in aggravation and mitigation as required by rule 4.414 of the California Rules of Court.[4] As to findings of aggravation, it found the nature of the crimes to be serious acts of child molestation that went on for a substantial period of time. (Rule 4.414(a)(1).) It

---

[3] The Attorney General argues defendant was statutorily ineligible for probation under Penal Code section 1203.066. That statute renders ineligible a person convicted of continuous sexual abuse who had "substantial sexual contact" (e.g., masturbation) with the victim, and where that fact was alleged in the pleading and was found true by the trier of fact. (Pen. Code, § 1203.066, subds. (a)(8), (b), (c)(1).) Continuous sexual abuse may be based on either lewd acts upon a child under 14 or substantial sexual conduct. (Pen. Code, § 288.5.) Although the record is insufficient to decide which may be the case here, it is of no consequence, because the trial court treated the defendant as though he were eligible for probation. So do we.

[4] Undesignated references to rules are to the California Rules of Court.

15

determined the victim was vulnerable. She lived with the defendant periodically, called him "Papa," and looked up to him. (Rules 4.414(a)(3); 4.421(a)(3).) It determined defendant was an active participant. He was the one who would go to the victim and perform the crimes. (Rule 4.414(a)(6).) It found defendant acted with some sophistication and professionalism. He would perform the crimes in the night when no one else was awake or aware. He didn't even know if the victim was awake or aware of what he was doing to her. (Rules 4.14(a)(8); 4.421(a)(8).) It determined defendant was "the poster-child of a person who took advantage of a position of trust." (Rules 4.414(a)(9); 4.421(a)(11).)

The court also considered the likelihood defendant would be a danger to others if not incarcerated. (Rule 4.414(b)(8).) For this finding, he relied upon a posttrial psychiatric evaluation prepared by Dr. Daniel W. Edwards, who concluded defendant was a pedophile and would be a threat if he was in the presence of minor females. (See Pen. Code, § 288.1.) The court did not know how defendant would be specifically excluded from having any contact with young girls, but it acknowledged court orders could be made to accommodate that circumstance.

As to findings of mitigation, the court found defendant was not armed when he performed the crimes (Rule 4.414(a)(2)); he had no prior criminal history (rules 4.414(b)(1); 4.423(b)(1)); and he had indicated a willingness, and had the ability, to comply with the terms of probation. (Rule 4.414(b)(3), (b)(4).) The court also considered the effect imprisonment would have on defendant due to his age (61 at the time of trial) and on his family, and the consequences that would result from a felony conviction. (Rule 4.414(b)(5), (b)(6).) It also noted defendant, although he had not admitted any of the crimes, was remorseful to the extent his case had affected his family, including the victim. (Rule 4.414(b)(7).)

Defendant was determined under the Static-99R test to be a low risk for being charged or convicted for another sexual offense if released on probation. In addition,

16

family members, friends, and work associates submitted a total of 39 character letters to the court in support of defendant.

The trial court weighed all of these factors and concluded defendant was not suitable for probation. Under these circumstances, we cannot say the court abused its discretion in doing so.

Defendant contends the court abused its discretion because it failed to consider his lack of any criminal history, the role he played in raising his own children, the widespread support he had in the community, and his age. He also claims the court failed to properly weigh the posttrial psychological evaluation. The record, however, indicates the court did consider these factors, and it reached a different conclusion about them than defendant had hoped. Defendant has not shown the court denied probation irrationally or arbitrarily.

" 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

We will not disturb the decision denying probation.

## DISPOSITION

The judgment is affirmed.

NICHOLSON     , J.

We concur:

BLEASE     , Acting P. J.

HULL     , J.