Filed 2/6/15  P. v. Davis CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B247993 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA391911) |
| v. | |
| FRED LEE DAVIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Kennedy, Judge.  Affirmed.

Lynne S. Coffin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Fred Lee Davis, appeals his conviction for attempted voluntary manslaughter, with great bodily injury, dangerous weapon use, and a prior serious felony conviction finding (Pen. Code, §§ 664, 192, subd. (a), 12022.7, 12022, subd. (b)(1), 667, subds. (a)-(i)).[1] He was sentenced to state prison for a term of 19 years.

The judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

On December 15, 2011, Derrick Powell, a transient, was walking down San Pedro Street pushing his shopping cart. The cart contained eight wooden pallets Powell hoped to sell and some bottles and cans he intended to recycle. Defendant Davis approached, accused Powell of stealing his bottles and cans, and started punching him. Powell punched him back. The fight only lasted a few minutes. Davis then walked away after Powell pulled out a knife and let Davis see it.

Powell resumed walking down the street, assuming the fight was over. But when he glanced over his shoulder, he saw Davis coming at him with a six-foot metal pole. Davis struck Powell in the chest hard with the pole, knocking him onto his back. As Powell hit the ground, his knife fell out of his sweatshirt pocket. Powell began running away and shouting for help. Davis dropped the pipe, picked up the knife and chased Powell, who tripped and fell. Powell pleaded with Davis to leave him alone, but Davis replied, "I am going to kill you." Davis stabbed Powell in the shoulder, side, upper torso, back and thigh.

Los Angeles Police Officer Derrick Prude had been escorting a street maintenance crew when some people started pointing toward San Pedro Street. He observed Davis and Powell on the ground, fighting. Prude pulled his patrol car alongside them. Davis was standing over Powell, punching him. When Prude yelled at Davis to stop, Davis

---

[1] All further references are to the Penal Code unless otherwise specified.

looked back at him but continued to punch Powell. Even when Prude got out of his car and ordered him to stop, Davis continued to assault Powell. Then Prude noticed the knife and realized Davis had been stabbing Powell. Prude drew his gun and only then did Davis drop the knife.

At the emergency room, it was determined Powell had sustained a punctured lung as well as multiple stab wounds. Because of the amount of blood he lost, Powell could have died from these wounds had he not been taken to the hospital.

2. *Defense evidence.*

Davis testified he was a transient. He had been pushing his shopping cart down the street when he passed Powell, whom he had never seen before, going in the opposite direction. Powell started calling Davis names and accused him of stealing his cans. When they got close, Powell hit Davis in the face several times. Davis hit him back and overpowered him. Powell fell and Davis pinned him to the ground and started punching him in the face. People who were standing around told Davis to stop before he killed Powell. Davis looked down and saw that Powell was bleeding from his nose, mouth and eye. Davis realized he did not want to kill Powell so he stopped. But as Davis turned to walk away, Powell ran at him with a knife. Davis fled. Powell returned to Davis's shopping cart and began destroying his property.

A friend tossed Davis a large metal pipe. Meanwhile, Powell took Davis's laptop computer, put it into his own cart and started walking away. Davis chased him. When Davis asked for his property back, Powell lunged at him with the knife and Davis hit him with the pipe. Powell dropped the knife and started to run away, but he tripped. Davis picked up the knife and began stabbing Powell. However, Davis testified he had no intention of killing Powell and he denied having said, "I am going to kill you."

3. *Prosecution rebuttal evidence.*

Detective Miguel Terrazas testified that when Davis was interviewed he admitted trying to kill Powell. Davis said Powell "tried to run. I ran after him and stabbed him in his back first. And when he turned around I stabbed him in . . . the chest. I was trying to kill him."

3

**CONTENTIONS**

1. The trial court erred by failing to hold a competency hearing.

2. The trial court erred by refusing to vacate Davis's Three Strikes prior.

**DISCUSSION**

1. *Trial court did not err by failing to hold a competency hearing.*

Davis contends his conviction must be reversed because the trial court should have held a hearing to determine if he was competent to stand trial. This claim is meritless.

      a. *Legal principles.*

Section 1367, subdivision (a), provides: "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

"The due process clause of the federal Constitution's Fourteenth Amendment prohibits trying a criminal defendant who is mentally incompetent. [Citations.] A defendant is deemed competent to stand trial only if he ' "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" ' and ' "has a rational as well as factual understanding of the proceedings against him." ' [Citation.] [¶] When a trial court is presented with evidence that raises a reasonable doubt about a defendant's mental competence to stand trial, federal due process principles require that trial proceedings be suspended and a hearing be held to determine the defendant's competence. [Citations.] Only upon a determination that the defendant is mentally competent may the matter proceed to trial. [Citation.] [¶] California law reflects those constitutional requirements. Section 1368, in subdivision (a), requires a trial court to suspend criminal proceedings at any time 'prior to judgment' if the court reasonably doubts 'the mental competence of the defendant.' A defendant can create reasonable doubt through substantial evidence of mental incompetence, or the trial court can raise the issue on its own. . . ." (*People v. Ary* (2011) 51 Cal.4th 510, 517.)

4

"A defendant is presumed to be mentally competent to stand trial. (§ 1369, subd. (f).) [¶] . . . [S]ection 1368 provides that if the trial court has any doubt as to the defendant's competence to stand trial, it must state that doubt in the record and inquire of counsel whether, in his or her opinion, the defendant is mentally competent. (§ 1368, subd. (a).) The trial court is authorized to conduct a competency hearing on its own motion and at the request of counsel. (§ 1368, subd. (b).) [¶] . . . '[O]nce the accused has come forward with substantial evidence of incompetence to stand trial, due process requires that a full competence hearing be held as a matter of right. [Citation.] In that event, the trial judge has no discretion to exercise. [Citation.] As we also have noted, substantial evidence of incompetence is sufficient to require a full competence hearing even if the evidence is in conflict. [Citation.] We have concluded that where the substantial evidence test is satisfied and a full competence hearing is required but the trial court fails to hold one, the judgment must be reversed. [Citation.]' " (*People v. Young* (2005) 34 Cal.4th 1149, 1216-1217, fn. omitted.)

b. *Background*.

Following the filing of the complaint in this matter, Davis filed a *Faretta*[2] waiver so he could represent himself at the preliminary hearing, with Attorney Lawrence Sperber acting as stand-by counsel. In his *Faretta* waiver, Davis indicated he had graduated from high school and was a "former real estate entrepreneur." For "additional formal education," Davis wrote "self-educated in federal & state prisons," and for "legal education" he wrote "over (20) yrs. of pro-per litigation in (federal) and state prisons." During the preliminary hearing in April 2012, Davis cross-examined witnesses and testified on his own behalf.

---

[2]     *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525].

At the preliminary hearing, Davis submitted documentation related to his mental history. The trial court said, "The defendant has offered a three-page report from the Social Security Administration dated December 15th, 2011, indicating that he is – it's a decision from the Social Security Administration, an administrative decision indicating that he's been out of work for some time and that he has a severe impairment for a variety of medical disorders, including schizoaffective disorder."

On June 3, 2012, Davis filed a handwritten 14-page motion to set aside the information for insufficient evidence pursuant to section 995, accompanied by supporting case law, statutory authority and a detailed argument. He had earlier filed motions asking for appointment of crime scene expert services and an audio visual expert.[3]

On June 29, 2012, after denying Davis's section 995 motion, the trial court said, "You also mentioned something about your mental state. I didn't see any evidence in the record, nor did I see anything from any doctors that there is any issue of competency. You apparently from what I read did seem to understand . . . what was happening in court, so I don't see we have a [competency] situation here."

On July 16, 2012, Davis filed a motion asking for $150 to be deposited into his pro per account at the county jail. The motion included a detailed list of items Davis claimed he needed in order to defend his case.

On October 4, 2012, the trial court granted Davis's request to have Mark Williams substituted in as attorney of record. On October 30, the court granted Davis's request to again represent himself and to relieve Williams. The court subsequently reappointed Sperber as stand-by counsel.

On November 2, 2012, Davis changed his plea from "not guilty" to "not guilty by reason of insanity." The trial court asked, "Have you ever had medical issues before?," to which Davis replied, "I have [a] history of mental illness. I have a lot of documentation I would like to present to the court." When Davis asked, "Can I have

---

**3**     Apparently there was an issue about whether a street surveillance camera had recorded any of the events.

some psychiatrist that I had in the past subpoenaed to testify?" the trial court said, "If you want, yes." Davis then asked the court to read into the record a letter he had written, which the court did:

"The Court: . . . [¶] I will read it. 'I was intoxicated on cocaine and never had the specific intent needed for the guilty verdict of the charge of attempted murder. I wasn't taking medication on the day that called my mental illness of P.T.S.D., social personality disorder, bipolar disorder, to come into the violent incident [*sic*]. I am also taking psychiatric medications since July 13, 2011, the day of discharge from my California state parole supervisor.'

"The Defendant: I hadn't taken.

"The Court: You hadn't taken. [¶] Let me tell you when people want to represent themselves, I have appointed a psychiatrist to make sure the defendant is competent to represent [himself]. I have not seen anything in court that indicates Mr. Davis does not understand who the lawyers are, what the charges are, that he is not going to follow the court procedures. [¶] I am not undertaking the procedure I normally do to see if someone is competent. I was not aware at this moment he had any degree of psychiatric issues. I don't see anything in this court to revisit the pro per status. I may see something in the future."

The following colloquy then occurred:

"The Court: . . . [¶] All right. What else are we doing?

"The Defendant: I want to file this for my mental health illness purposes.

"The Court: Are you on medication now?

"The Defendant: Yeah.

"The Court: We are not going to trial today.

"The Defendant: I want it in the record.

"The Court: We'll put it in the file."

The trial court told the prosecutor Davis had "just filed something showing he previously had a mental illness. That was back in August of 2009."

7

On November 6, 2012, at Davis's request, the trial court appointed two doctors to examine him in connection with his "not guilty by reason of insanity" plea.

On December 12, 2012, the trial court granted Davis's request to withdraw his pro per status and have Sperber represent him. On February 14, 2013, Davis withdrew his "not guilty by reason of insanity" plea and entered a "not guilty" plea instead.

On March 8, 2013, the trial court denied a *Marsden*[4] motion seeking to discharge trial counsel. At that hearing, Davis told the trial court: "[F]irst of all, I had a plea of not guilty by reason of insanity. And I have a validated federal documentation – for mental illness, S.S.I. [¶] All the law I been reading concerning the way they handled my reports that was did by two state . . . doctors, they wasn't did right." Asked by the trial court to respond, Sperber said: "I believe that Mr. Davis changed his plea on his own to N.G.I. [¶] Two doctors were appointed during that period of time. Both of them said that they felt he's not an N.G.I. [¶] I got the case, everything that I've seen and I've discussed with Mr. Davis both before and after indicates to me that that's not a valid plea. [¶] I guess he's upset with the fact that I'm not pursuing it or he's upset with the fact that the doctors found that he was legally sane at the time of the commission of this. So I assume that's what the basis of this is."

Davis argued Sperber had not handled his "mental illness report right" because "[a]ll the law books I been reading concerning mental illness is that the doctors that see a patient is supposed to be over a period of . . . hours. I was seen by two doctors not more . . . than 35 minutes apiece. [¶] And one of them wrote a 12[-page] report . . . on me in 30 minutes. You can't say that . . . I don't have a mental illness. I . . . was documented by S.S.I. as having a full mental illness."

The trial court denied Davis's *Marsden* motion and then denied, as untimely, Davis's request to again represent himself.

---

[4]    *People v. Marsden* (1970) 2 Cal.3d 118.

c. *Discussion.*

Davis contends the trial court erred by failing to declare a doubt as to his competency to stand trial. We disagree.

Davis argues there was substantial evidence he was incompetent because he continually changed his mind as to whether to represent himself or rely on counsel, and kept switching between pleading "not guilty" and "not guilty by reason of insanity." He points out that after representing himself at the preliminary hearing, he asked to have counsel appointed in early October 2012, only to reverse course by the end of that month and ask to go pro per, and then again change his mind in December 2012 when the trial court granted his request for an attorney. But Davis's "changing preferences with regard to the extent of his own participation in the proceedings, and the extent to which a defense would be presented, did not create a reasonable doubt as to his competence to proceed." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1373; see also *People v. Koontz* (2002) 27 Cal.4th 1041, 1065 ["deficiencies in [defendant's] self-representation suggest not incompetency to stand trial but, rather, the lack of legal training common to most pro se defendants"].)

Davis argues he repeatedly informed the trial court he had a history of mental illness and that he had been prescribed psychiatric drugs. First, the record reveals Davis almost always referred to his mental illness in connection with a defense to the criminal charges he was facing, not in connection with his competence to stand trial. Second, a documented history of mental illness does not necessarily demonstrate incompetence to stand trial.

As our Supreme Court has explained: "[E]ven a history of serious mental illness does not necessarily constitute substantial evidence of incompetence that would require a court to declare a doubt concerning a defendant's competence and to conduct a hearing on that issue. (See, e.g., *People v. Ramos* (2004) 34 Cal.4th 494, 508 . . . [defendant must exhibit more than a preexisting psychiatric condition to be entitled to a competency hearing].) We have found that evidence of more serious mental disturbances than defendant displayed did not amount to substantial evidence of incompetence requiring a

9

competency hearing. (See, e.g., *People v. Ramos*, *supra*, 34 Cal.4th at pp. 508-511 [defendant's death wish, history of psychiatric treatment, planned suicide attempt, propensity for violence, and psychiatric testimony that defendant was physically abused as a child and suffered from a paranoid personality disorder did not constitute substantial evidence of incompetence requiring court to conduct a competency hearing].) Here, the circumstance that defendant had been found insane in a criminal proceeding and had been confined to a mental hospital for an unspecified period approximately 15 years prior to the present trial, without more, was insufficient to compel a doubt whether defendant had the mental capacity to understand the proceedings against him in the current prosecution." (*People v. Blair* (2005) 36 Cal.4th 686, 714, disapproved on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919-920.)

In *People v. Hayes* (1999) 21 Cal.4th 1211, the defendant "referred to his prior acquittal of murder on grounds of insanity, past psychiatric treatment, a prior finding of incompetence to stand trial, his commitment to a mental institution in Oregon, and treatment with psychotropic medication. None of this established present incompetence to stand trial." (*Id.* at p. 1281, fn. 30.) *Hayes* concluded: "[N]othing in the record suggests that at any time during these proceedings appellant was unable to understand the nature of the proceedings or to assist counsel in conducting the defense in a rational manner. Defense counsel never expressed a doubt as to appellant's competence. Moreover, appellant persuaded the trial court to permit him to act as cocounsel during the penalty trial. His presentation of that motion, the support he offered for it, and his subsequent presentation of several presentence motions and arguments in support thereof demonstrate beyond any doubt that he was fully aware of the nature of the proceedings and able to assist counsel." (*Id.* at p. 1282.)

The same circumstances were present here. Davis's trial attorney, Sperber, never raised a doubt as to his competency. At the times Davis was representing himself he played a very active role in the proceedings, demonstrating he well understood what was going on. He filed a detailed attack on the sufficiency of the evidence presented at the preliminary hearing, requested the appointment of relevant expert witnesses, and – in

10

connection with an attempt to plea bargain for a lower sentence – argued he lacked the specific intent necessary to be convicted of attempted murder because of his mental illness and because he had been intoxicated when he assaulted Powell.

Davis complains the trial court "stated an incorrect standard for determining whether a 1368 hearing was necessary: 'I have not seen anything in court that indicates Mr. Davis does not understand who the lawyers are, what the charges are, that he is not going to follow the court procedures.' " However, "[a] number of . . . cases have rejected claims of error based upon the trial court's failure to recite particular 'magic words.' (See, e.g., *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1845 . . . [trial court need not recite 'magic words' in excluding evidence under Evid. Code, § 352, as long as record manifests trial court's exercise of discretion under statute]; *People v. Garrett* (1987) 195 Cal.App.3d 795, 801 . . . [same]; *People v. Maxwell* (1981) 115 Cal.App.3d 807, 812 . . . [court need not utter 'magic words "defendant is found mentally competent" ' for dismissal of proceedings under Pen. Code, § 1368, where court stated it 'no longer had a doubt' as to defendant's competency].)" (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 561, fn. 13.)

In any event, we review the trial court's ruling, not its reasoning, and we affirm if that ruling was correct on any ground. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) It plainly appears Davis was able "to understand the nature of the criminal proceedings [and] . . . assist counsel in the conduct of a defense in a rational manner." (§ 1367.)

The trial court did not err by failing to declare a doubt as to Davis's competency.

2. *Davis's* Romero *motion was properly denied.*

Davis contends the trial court erred by failing to vacate a prior serious felony conviction finding which resulted in a doubling of his sentence under the Three Strikes law. This claim is meritless.

a. *Legal principles.*

The factors to be considered in ruling on a motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, were set forth in *People v. Williams* (1998) 17 Cal.4th 148, 161: "[I]n ruling whether to strike or vacate a prior serious and/or violent felony

11

conviction allegation or finding under the Three Strikes law . . . 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at pp. 376-377.) Hence, " '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' " (*Id.* at p. 378.)

   b. *Sentencing.*

Davis filed a *Romero* motion to strike his 2001 prior serious felony conviction for robbery (§ 211). At a hearing on that motion, defense counsel pointed out the prior was 12 years old and for "an entirely different crime." The prosecutor argued Davis was a recidivist offender with a long criminal history involving weapons and violence.

The trial court declined to strike the prior, saying: "I agree that there is no legal basis to strike the defendant's strike at this time. He does have a very long history of convictions, incarcerations, violations of parole. [¶] Even the robbery matter, the 2001 conviction, he received a seven-year state prison sentence, and shortly after he was released he picked up a [drug] conviction . . . and he received a three-year state prison sentence for that. And then this particular incident occurred on December 15, 2011. So he couldn't have been out all that long after his last prison commitment at the time that this particular incident arose. [¶] So I don't feel that he is the type of individual that falls out of the spirit of the three-strikes provisions, and I am not going to strike the robbery prior from 2001."

        c. *Discussion.*

According to the probation report, Davis's adult convictions include the following offenses: battery (§ 242) in 1968; grand theft (§ 487) in 1968; bank robbery (18 U.S.C. § 2113(a)) in 1978 [10-year prison term]; assaulting a federal employee (18 U.S.C. § 111) in 1985 [18-month consecutive term]; two counts of attempted bank robbery (18 U.S.C. § 2113) in 1985 [15-year term]; possession of a controlled substance (Health & Saf. Code, § 11350) in 1999; armed robbery (§§ 211, 12022.5) in 2001 [seven-year term]; and, possession of a controlled substance (Health & Saf. Code, § 11350) in 2008 [three-year term].

We conclude Davis's extensive record and his recidivism constituted a sufficiently compelling reason for the trial court to deny his *Romero* motion. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 338 ["the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike of those defendants with a long and continuous criminal career"]; see also *People v. Carmony, supra*, 33 Cal.4th at p. 378 [" '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' "].)

13

We reject Davis's argument the 12-year-old robbery conviction was too remote. (See *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [remoteness of 17-year-old priors insignificant in light of defendant's extremely long criminal history]; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 ["Where, as here, the defendant has led a continuous life of crime after the prior, there has been no 'washing out' and there is simply nothing mitigating about a 20-year-old prior. Phrased otherwise, the defendant has not lead a 'legally blameless life' since the 1976 prior."].)

In sum, we cannot agree the trial court abused its discretion when it denied Davis's motion. (See *People v. Carmony, supra,* 33 Cal.4th at p. 377 ["trial court does not abuse its discretion [in denying *Romero* motion] unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

14